JOHN A. JOHNSON ET AL., APPELLANTS, v. PLATTE VALLEY PUBLIC POWER AND IRRIGATION DISTRICT ET AL., APPELLEES.

274 N. W. 386

FILED JUNE 30, 1937. No. 29943.

*Dryden, Dryden & Jensen*, for appellants.

*Beeler, Crosby & Baskins* and *E. H. Evans*, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

Goss, C. J.

This is an appeal by three joint plaintiffs from a judgment denying their injunction and dismissing their action. Plaintiffs sought to enjoin defendants from taking by condemnation proceedings the right of way across their several lands for purposes of a transmission line.

The petition described the lands owned separately by each plaintiff and alleged that the condemnation proceedings in the county court were unlawful because (A) only five appraisers were called whereas it is alleged that the applicable statute called for six appraisers; (B) that the proceedings asked for the appraisement of plaintiffs' lands for use only for pole structures to be placed thereon for high tension electric wires 20 to 50 feet above the ground and for the destruction of trees only in a direct line the width of the pole structures whereas the easement provided for cutting trees for 75 feet on either side of the right of way; (C) that defendant district's engineer, at the time of making the appraisement, represented to the appraisers that the structures would be composed of poles 60 feet tall with the wires 50 feet above the ground at the poles and 27 feet above the ground between poles, whereas, the wires are 10 feet closer to the ground than as so represented; (D) that under the statute defendant district's liabilities are limited to its profits and no damages hereafter allowed plaintiffs can be recovered unless defendant district shows a profit in its operations; (E) that the easement actually granted calls for construction diagonally across plaintiffs' lands and not along section, half-section, or boundary lines of plaintiffs' property lines, thus causing greater damage than if constructed on boundary lines as required by statute, and is thus contrary to law and to statutes in eminent domain proceedings in such cases; (F) that in the condemnation proceedings the notices served on plaintiffs did not describe their lands, but the property described purported to be in township 18.

Plaintiffs further alleged that they have no adequate remedy at law, that the right of way as granted is con-

trary to statutory law and is being taken without due process of law and for a public purpose without compensation, and that they have no remedy for damages against defendants by reason of the statutory limitation of liability.

By a joint answer defendants alleged a misjoinder of plaintiffs in that the petition shows on its face that each had a separate cause of action upon a separate tract separately owned; that the law provided for five appraisers; that the proceedings correctly described the pole structures that would be placed on the land, condemned the right to destroy any necessary trees across the separate tracts, and for ingress and egress; that all damages were appraised and the amounts of the appraisals have been deposited with the county judge for the use of plaintiffs; and the poles for the transmission line have been placed upon, over and across the lands; defendants admit (as alleged in the petition) that the assets of defendant district will be profits derived from its hydroelectric plant and irrigation, and allege that it will create a reserve fund for the payment of all repairs and expenses of acquiring right of way for its works and cost of operation of its project, and allege that there will be money available to pay any claims or judgments secured against it; allege that the easement runs across plaintiffs' lands and is not required by the statutes in such cases to run upon section or fractional section lines.

Plaintiffs demurred to the answer, but we find no ruling thereon. Later a reply, combining a general denial to the answer and a demurrer thereto, was filed. The demurrer was to certain portions of the answer to the general effect that the answer did not state sufficient facts to constitute a defense to the plaintiffs' cause of action.

In the judgment the court found that five appraisers is the number provided by statute for such condemnation proceedings; that plaintiffs are protected at law for any property taken which was not described in the original proceedings and may recover damages therefor; that the

law under which the Platte Valley Public Power and Irrigation District is organized is constitutional, and that, if damages cannot be collected, their use of the property will cease and plaintiffs may recover the same; and that the statute providing for the building of transmission lines on section, half-section and boundary lines does not apply to these defendants.

If defendants' claim as to misjoinder of plaintiffs is good, that will dispose of the case. So we consider that now. We did not heretofore recite that defendants demurred to the petition. The transcript shows no ruling by the court upon that demurrer. Defendants soon thereafter filed their answer, the terms of which we have recited. The demurrer is a general demurrer and failed to demur specially on the ground of misjoinder of plaintiffs.

Section 20-806, Comp. St. 1929, provides six grounds for demurrer, the fourth of which is: "That there is a defect of parties, plaintiff or defendant." And the sixth of which is: "That the petition does not state facts sufficient to constitute a cause of action." Section 20-807, Comp. St. 1929, is as follows: "The demurrer shall specify distinctly the grounds of objection to the petition. Unless it do so, it shall be regarded as objecting only that the petition does not state facts sufficient to constitute a cause of action." Section 20-808, says: "When any of the defects enumerated in section one hundred and seven (20-806) do not appear upon the face of the petition, the objection may be taken by answer; and if no objection be taken either by demurrer or answer the defendant shall be deemed to have waived the same, except only the objection to the jurisdiction of the court, and that the petition does not state facts sufficient to constitute a cause of action." We interpret this to mean that, when the defect of misjoinder of parties appears on the face of the petition, the defect must be raised by a demurrer specially directed to the defect or not at all.

In *Snowden v. Tyler*, 21 Neb. 199, 31 N. W. 661, it is said: "It is objected that the petition is multifarious because the tenants in common are joined in the petition.

This defect, if it is one, appeared on the face of the petition and should have been raised by demurrer, and as it was not, it is waived."

As to whether there should have been six appraisers, instead of five, much is said upon both sides of the argument. The statutes and the arguments are not only confusing, but it seems to us that in the circumstances plaintiffs have rendered it unnecessary for us to decide the exact legal number of appraisers intended by the legislature to appraise the damages in such a case; for plaintiffs had notice of the appointment of five appraisers. That notice was duly served upon them out of the county court. They had ten days' notice of the inspection of the land by the appraisers, had written notice and the names of the appraisers thereon, and Wescott and Johnson were present at such inspection; Buettner was ill. They also had an opportunity to object, but so far as we can see from the record in the county court and from the record in this case, in which plaintiffs Wescott and Johnson testified and Carl A. Buettner testified on behalf of his father, there was no protest and no objection to five appraisers rather than six, until this injunction suit was begun. Defendants make a strong argument that in the exercise of the right of eminent domain they are governed, by reference in the act, by other statutes which provide for five appraisers, but we express no opinion on the merits of that legal argument. For we are able to hold and do hold that, by reason of all the circumstances, the use of five appraisers was at most a mere irregularity, which is not available to plaintiffs in this injunction suit. By failing to make timely objection to five appraisers, plaintiffs waived any right they may have had to an appraisal of their damages by six appraisers.

The fact appeared in the testimony in this case that plaintiffs have appealed from the awards and those appeals have not yet been tried.

It is claimed that defendants went outside of the line and cut trees, in one instance testified to be 90 feet from

the center line of the 14½-foot line condemned for the poles of the power company. In any case in which this is an issuable fact and can be shown, plaintiff has a remedy at law. But, having occurred after the condemnation proceedings, it has no bearing on plaintiffs' right to an injunction in this case. The awards especially excluded "speculative damage or crop damage that cannot be anticipated at this time."

Plaintiffs allege that the law under which the right of way for the power line is sought is unconstitutional as it deprives plaintiffs of their property without due process of law. The law was enacted as Senate File 310, chapter 86, beginning on page 337 of the 1933 Session Laws. It is carried into the compilation of the statutes and becomes a new or additional article 7 of chapter 70. See sections 70-701 to 70-715, Comp. St. Supp. 1933. The point is made in appellants' argument that section 9 of the act, or section 70-709 in the 1933 Comp. St. Supp., following provisions in the title, restricts the funds out of which any district may provide for payment of any liability (and therefore for condemnation money) solely to revenues derived from operation, and therefore, as it cannot derive revenue until it is in operation, it cannot constitutionally pay for private property taken or damaged, as required by the Constitution. The same act was considered by us in 1934 in the case of *State v. Fricke*, 126 Neb. 736, 254 N. W. 409, and it was held constitutional. One syllabus point said: "Chapter 86, Laws 1933, does not authorize public power and irrigation districts to condemn and take private property for public use without just compensation." In the text of the opinion it is further said: "It is further argued that the district has no funds at its command with which to pay for property condemned. That does not render the act unconstitutional. It would be necessary for the district to acquire the funds to pay for property condemned, in the event that it becomes necessary for it to resort to condemnation. This court is not concerned with the difficulties that the district may encounter in obtaining the funds with which

to finance construction of its proposed plant. Since relator and others similarly situated are fully protected in their private property and are assured that it may not be taken from them, except upon payment of just compensation, neither relator nor any one similarly situated has cause to complain." We see no reason to overrule or modify that opinion.

Under the express authority of the case just cited, the district court properly held on this point "that the law under which the Platte Valley Public Power and Irrigation District is organized is constitutional, and that, if damages cannot be collected, their use of the property will cease and plaintiffs may recover the same."

It is claimed by appellants that there was an error in the condemnation proceedings, wherein some of the land was described as in township 18, when the land in fact was in township 8. This was merely a clerical error and it was properly corrected in an order made and filed August 15, 1935, by the county judge before the appraisal was made. The parties had notice of it, knew that the lands condemned were in the right township, and no one was deceived or misled thereby.

The most complicated question to decide is whether, under the right of eminent domain, defendant district, appellee, was required to condemn along boundary lines, or whether, as it did, it was authorized to cross plaintiffs' lands irrespective of following boundary lines. It is conceded by appellees that, in exercising the right of eminent domain across plaintiffs' lands, the right must affirmatively appear in the statutes.

Appellee district is organized under chapter 86, beginning on page 337 of the 1933 Session Laws, now known as chapter 70, article 7, being sections 70-701 to 70-715, Comp. St. Supp. 1933, and the same section numbers in Comp. St. Supp. 1935. Section 70-707 declares: "All power plants and systems and all irrigation works constructed or otherwise acquired, or used, or operated, by any district under the provisions of this act * * * are hereby declared

to be works of internal improvement, and all laws applicable to works of internal improvement, and all provisions of law now applicable to electric light and power corporations, or to irrigation districts, or to privately owned irrigation corporations, as regards the exercise of the power of eminent domain, the use and occupation of state and other public lands and highways, * * * shall be applicable as nearly as may be, and in so far as not in conflict with the provisions of this act, to districts organized under this act. * * * In addition to any other rights and powers hereinabove conferred upon any district organized under the provisions of this act such district shall have and exercise the power of eminent domain for the purposes and after the manner provided for in sections 46-602, 46-603, 46-607, 46-608, 46-617, Compiled Statutes of Nebraska, 1929, or in any one or more of said sections."

Section 46-603, Comp. St: 1929, above referred to, provides: "In case of the refusal of the owner or claimant of any lands through which such ditch, canal or other works are proposed to be made or constructed, to allow the passage thereof, the person, desiring the right of way, may present to the judge of the county in which such lands are situated, a petition describing the lands to be crossed, the size of the ditch, canal or works, the quantity of land which is required to be taken, and setting forth the names of the parties interested in the lands to be crossed, and praying for the appointment of five appraisers, disinterested freeholders of said county, to ascertain the compensation to be made to such owners or parties interested. Upon the filing of said petition, the same proceedings for condemnation of such right of way shall be had as is provided by law for the condemnation of rights of way for railroad corporations; and the same provisions of law providing for the condemnation of rights of way for railroad corporations, the payment of damages and the rights of appeal shall be applicable to irrigation ditches, canals and other works provided for in this article."

Section 46-601, Comp. St. 1929, the first section of the

same article of the same act, says: "Canals and other works constructed for irrigation or water power purposes, or both, are hereby declared to be works of internal improvement; and all laws applicable to works of internal improvement are hereby declared to be applicable to such canal and irrigation works." One of the chief "water power purposes" is the production and transmission of electricity.

Section 70-707, Comp. St. Supp. 1933 and 1935, expressly grants to all works of internal improvement the power of eminent domain exercised by "electric light and power corporations," by "irrigation districts" and by "railroad corporations." Defendant district is a work of internal improvement. It was authorized therefore to condemn plaintiffs' lands across the same without following boundary lines because in the laws relating to light and power corporations, to irrigation districts and to railroad corporations, the laws as to them were expressly made applicable to defendant corporation. The most usual and best known of these corporations acquiring right of way is a railroad corporation. The general statute granting the power of eminent domain to a railroad gives it the power to enter upon and condemn "any land."

The judgment of the district court is

AFFIRMED.