Cy Hagadone et al., Appellees, v. Dawson County Irrigation Company, Appellant.

285 N. W. 600

Filed May 5, 1939.   No. 30565.

*Cook & Cook,* for appellant.

*Elbert H. Smith, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, MESSMORE and JOHNSEN, JJ.

PAINE, J.

This is an action in equity for an injunction to prevent the diversion of water into, and the increase of the flow of, a natural stream, and for damages already sustained by such acts. The trial court found for the plaintiff, and assessed the damages at the sum of $400, and permanently enjoined the defendants from overflowing water into the creek on plaintiff's land. Supersedeas bond was fixed at $1,000, and one of the defendants, the Dawson County Irrigation Company, brings appeal to this court.

The appealing defendant assigns as errors that the judgment of the court is not sustained by sufficient evidence; that the court erred in adjudging the appealing defendant jointly liable with the other defendant, the Platte Valley Public Power and Irrigation District; that the court erred in arbitrarily dividing the damages accruing from the water diverted in July and August, 1936, and the damages accruing in October, November, and December, 1936, alleging that there is no evidence upon which to base such division; complains that the amount of the damages allowed is excessive, and charges that the court erred in enjoining

the appealing defendant from wasting irrigation water into Strever creek.

Cy Hagadone and his wife, Annie, own a quarter-section of land some 11 miles northwest of Lexington, which he purchased in 1913. On the land there are 35 acres of alfalfa, 60 acres of pasture, and other land is tillable. Across his farm meandered Strever creek, a small creek, usually flowing water about five or six inches deep and 18 to 20 inches wide, and even in the rainy seasons the creek would not be over four or five feet wide, and farm teams with wagons, or mowing machines, or other farm equipment, could be driven across the creek to work on the other side, and live stock could go to pasturage anywhere along its banks.

Loella Strever is the owner of the land above Hagadone's, and Strever creek flows from her land onto and across the Hagadone land. Leland Strever is the tenant on Loella Strever's land, and they were made parties defendant, but at the close of the trial the court dismissed the cause of action as to both of them.

The Dawson County Irrigation Company's ditch crosses over Strever creek on the land of the defendant Loella Strever, and during July, August, and September, 1933, said irrigation company caused a large amount of water to be diverted into Strever creek from its ditch, and this flowed in Strever creek from the Strever land onto the Hagadone land, and caused considerable damage. The evidence shows that since said time the defendants have caused said creek to overflow from waters discharged into said creek at some time during the irrigation season of each succeeding year; that in July and August, 1936, the defendants, Dawson County Irrigation Company and Platte Valley Public Power and Irrigation District, through their dump-box, by direction of Richard Nosky, engineer of said irrigation district, raised and lowered a check in said canal where it crossed the land of Charles Knauss, approximately one-half mile east of said dump-box on said canal, and caused the waters to escape, and after said waters had

been caused to escape into Strever creek and pass through plaintiff's land, they were further down delivered to the defendant Elm Creek Ditch Company; that this large amount of water put into it caused Strever creek to be of a depth of four feet nine inches at times, and 40 feet in width, and so diverted said water into Strever creek for a period of 24 days, and as said water overflowed along the Hagadone land it caused considerable damage, destroyed fences, damaged his pasture, washed out the banks of said creek, and washed down trees that were growing on said banks; that again in October, November, and December the defendants caused water to flow as before, and caused much additional damage, all as set out in the pleadings.

The evidence disclosed that water was diverted in this way for a total of some 84 days, and that the amount diverted amounted to over 2,000 acre feet of water, or enough to cover three sections of land one foot deep, and that the high water got up over the Hagadone farm bridge on his place. The evidence was that the water was taken down through Strever creek, and ten or twelve miles below, what was left of it went into Batty lateral, which was not constructed until 1930.

It is disclosed that in the summer of 1936 the irrigation district had accumulated water in its Sutherland reservoir, and contracted to deliver water to its irrigators; that the Platte river was practically dry, and if they had put this water back in the Platte river it would simply dry up and not run down the river; that an arrangement was made that the Sutherland project would bring it to the Dawson County Irrigation Company, which simply permitted the use of its canal to the waste point on the Strever land and then the water was carried down the Strever creek, which method would eventually deliver it to a point near the headgate of the Elm Creek Ditch Company, and Mr. Stuckey, the president of the company, gave the use of his canal as a matter of convenience. The evidence further shows that an employee of the Sutherland district

kept a record of the flow of water, and the engineer, Mr. Nosky, was there in charge of the whole thing; that it was agreed that the best way to take it to the Elm Creek canal ditch was through this plan. The defendants claim that it was done with the consent of the state department of roads and irrigation.

It is argued that the court erred in lumping the damages of the two floods together, for they are separate torts, and that the Dawson County Irrigation Company had no responsibility whatever for the damage done by the first flood in July and August, and that the Platte Valley Irrigation District had nothing to do with the flooding in October, November, and December, and that these independent torts cannot be combined into one claim; that they were clearly independent tort-feasors.

Section 20-808, Comp. St. 1929, provides that, in the case of misjoinder of parties, if no objection is taken by demurrer or answer, the defendant shall be deemed to have waived the same, and in this case no demurrer or motion was filed, and nothing set out in the answer raising the question of misjoinder, and it appears to be raised in this court for the first time.

It was held in *Johnson v. Platte Valley Public Power and Irrigation District*, 133 Neb. 97, 274 N. W. 386, that "When a defect of misjoinder of parties appears on the face of the petition, it must be raised by special demurrer."

Roy F. Stuckey has been at all times president of the Dawson County Irrigation Company, and is also a director in the Platte Valley Public Power and Irrigation Disrict, and water which went down through the Strever creek was taken down the Batty lateral and sold to irrigators, and Hagadone complained to Mr. Stuckey in his bank of the damages being done by the overflow of Strever creek, and Mr. Nosky, the engineer of the irrigation district, came in and they all talked it over, and the facts are little in dispute.

In this case the amended petition set out separate causes of action, and asked damages in a very large sum because of the overflowing of Strever creek. Over 400 pages of

evidence and a large number of exhibits appear in the bill of exceptions. At the close of the evidence it was the joint request of all parties that Judge Tewell go to the farm of plaintiffs, accompanied by the counsel for all parties, and carefully examine into all the facts on the ground, which he did. After taking the case under advisement, the trial court found that Loella Strever and Leland Strever did not join in, or take any part in, the acts alleged; that the Platte Valley Public Power and Irrigation District did not contribute to or cause the overflowing of water on plaintiff's land after the first day of October, 1936.

The court finds that all of the damages resulting from the several torts of defendants amounted to a total sum of but $400, and that the Dawson County Irrigation Company is liable for said entire sum, and further finds that the damage done from July 19, 1936, to August 7, 1936, amounted to only $100; and for this $100 the Platte Valley Public Power and Irrigation District is liable jointly with the Dawson County Irrigation Company, and granted an injunction against further diversion of water into this creek, and found that they did not have the right to divert into the creek any more water than would have been carried off by the original banks of this Strever creek. In such a case, where all the overflow and flooding came directly through the overflow from the ditch of one company, but part of the water was furnished by another company for a few days, it appears to the court that the cause of action would be joint and several, and that Judge Tewell was right in finding that the recovery could be had, as set out in his journal entry.

In 17 C. J. 758, it is said: "Where there is evidence as to damage from various causes, as to a portion of which defendant cannot be held responsible, and no evidence as to the portion of the damage resulting from the separate causes, the proof is too uncertain to permit the jury arbitrarily to apportion a part or all of the proved damages to the acts for which defendant is responsible. But on the other hand, it has been held that where the evidence clearly shows some subsantial damages to which plaintiff is entitled, he

is not confined to a recovery of mere nominal damages by a failure to show as to all of the items of damage that defendant was responsible therefor; and in the case of concurrent torts by several the difficulty of ascertaining with exactness the proportion of damage caused by each tort-feasor is not a ground for denying the right to recover a substantial sum, where the best evidence of which the case is susceptible, reasonably tending to show the relative proportion, is adduced." See, also, *Rogers v. Brown*, 129 Neb. 9, 260 N. W. 794; *O'Neill v. Rovatsos*, 114 Neb. 142, 206 N. W. 752; *Robertson v. Chicago, B. & Q. R. Co.*, 108 Neb. 569, 188 N. W. 190.

It is claimed that an easement for the drainage of waste waters into a creek through the land of another may be acquired by prescription, *Dunn v. Thomas*, 69 Neb. 683, 96 N. W. 142, in which case it was held that, if a ditch had been maintained over another's land without material change in location for the full period of ten years, an easement might be acquired, but it was denied on the ground that the ditch was run in different places at different times over the land, and not always in the same place. This citation of authority by the defendant does not control in the case at bar, for the evidence in this case does not show a continuous flooding of this land for ten years, but shows only an overflowing of plaintiff's land in not to exceed three or four years out of the last ten, and the evidence is not sufficient to establish any easement for a right to continue this overflowing which caused the damage in this case.

The amount of the damages finally awarded by the trial court was very small in comparison to the large amount of damages claimed by plaintiff. By his going upon this land and following this creek, and seeing the damage and the reason therefor, the trial court had a better understanding of the evidence given by the many witnesses than this court can have, even though a large number of pictures of the meandering Strever creek were put in evidence.

In *Harris v. Steele*, 110 Neb. 213, 193 N. W. 268, the court said: "Defendants urge that they are financially

responsible, and offer to pay any damages which the plaintiffs have sustained by reason of flowing the waters through the land; and that an injunction was not a proper remedy. We are unable to agree with this contention. The plaintiffs have the legal right to own and operate their lands free from the interference of others, in such manner as suits their own convenience or whims; and this right cannot be interfered with except in the manner provided by law."

Again, in *Meyers v. Schmidt,* 103 Neb. 475, 172 N. W. 352, this court said: "The rule seems to be that, where the nature and frequency of the trespasses are such as to prevent or threaten the substantial enjoyment of the rights of possession and property in land, an injunction will be granted."

"Equity will afford relief by the process of injunction against repeated acts of trespass, especially where committed under a claim which indicates a continuous and constant repetition of it." *Hackney v. McIninch,* 79 Neb. 128, 112 N. W. 296. See, also, *Standard Oil Co. v. O'Hare,* 122 Neb. 89, 239 N. W. 467; 27 R. C. L. 1294, sec. 206.

Section 46-608, Comp. St. 1929, provides generally for using a natural stream to conduct irrigation waters, but specifically holds one responsible for liability for all damage resulting from the overflow of such stream where the water so conducted contributed to such overflow.

We have examined this record with considerable care, and while there are several propositions of law presented to us, we cannot find that any prejudicial errors were committed by the trial court, and are inclined to the view that he made a very careful study of the facts and the law, and it is therefore ordered that the decree of the trial court be affirmed.

AFFIRMED.