VICTOR H. HALLIGAN, TRUSTEE OF THE ESTATE OF JOHN HALLIGAN, DECEASED, ET AL., APPELLEES, V. ALF ELANDER ET AL., APPELLEES, IMPLEADED WITH THE CENTRAL NEBRASKA PUBLIC POWER & IRRIGATION DISTRICT, INC., APPELLANT.
VICTOR H. HALLIGAN, TRUSTEE OF THE ESTATE OF JOHN J. HALLIGAN, DECEASED, ET AL., APPELLEES, V. ALF ELANDER ET AL., APPELLEES, IMPLEADED WITH PLATTE VALLEY PUBLIC POWER AND IRRIGATION DISTRICT, A PUBLIC CORPORATION, INTERVENING DEFENDANT, APPELLANT.

22 N. W. 2d 647

FILED APRIL 19, 1946. Nos. 31961, 31965.

No. 31961: *Beatty & Clarke*, *P. E. Boslaugh*, and *R. O. Canaday*, for appellant.

*Beeler, Crosby & Baskins, Beghtol & Rankin, E. H. Evans*, and *Victor H. Halligan*, for appellees.

No. 31965: *Beeler, Crosby & Baskins*, for appellant.

*Beatty & Clarke, Beghtol & Rankin, R. O. Canaday, E. H. Evans, P. E. Boslaugh*, and *Victor H. Halligan*, for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, and CHAPPELL, JJ.

PAINE, J.

The plaintiff brought an action in equity, which he claimed was for the purpose of adjudicating the height of the water table to be maintained in an area in seepage condition, and for an injunction to enjoin the Central Ne-

braska Public Power and Irrigation District from maintaining a higher water table than existed prior to the time of the construction of its project.

The defendants were the Central Nebraska Public Power and Irrigation District, a corporation, hereinafter called the defendant district, and a number of owners of the land lying between two tracts of land owned by plaintiff. The Platte Valley Public Power and Irrigation District, a corporation, hereinafter called the intervener district, intervened in the action.

At the close of the trial, the court dismissed the claims of the landowner defendants and found generally for the plaintiff, and, by way of a mandatory injunction, required the two districts to deepen to gravel and to extend and reconstruct certain old drainage ditches, to construct new drainage ditches, by eminent domain if necessary, and to regulate and maintain a fixed flow of water in a natural watercourse across certain lands.

From this decree, appeals have been taken by the two districts, and cross-appeals have been filed by two of the defendant landowners.

It should be stated that the principal issues involve four sections of land lying in a row, east and west. The plaintiff owns section 15 at the west end, with the tailrace of the intervener district about half a mile to the west of this section 15. Section 14, east of section 15, is owned by Pizer and Bergman, whose defaults were entered, and they are not interested in this litigation. Section 13, lying east of section 14, also in range 30, is owned by the defendant landowners, Talbot owning the west half, Rice owning the west half of the east half, and Elander owning the east half of the east half of section 13. Section 18 in range 29 lies east of section 13, and its southwest quarter is owned by White, while the east half and the northwest quarter of section 18 is owned by the plaintiff, who also owns land south of the South Platte River in section 7, immediately north of section 18. Down the east line of sections 7 and 18 runs the main canal of defendant district.

Much of the evidence of lay witnesses and engineers is in regard to a watercourse known as Fremont Slough, which rises in western Lincoln County and flows into the Platte River east of the plaintiff's land. It is a natural waterway, and runs eastward through sections 15, 14, 13, and 18, near the center. The defendant district conveys the water of Fremont Slough under its canal east of section 18 through two large tubes, operating on the siphon principle, and on to the east into the Platte River. The defendant district has straightened out Fremont Slough across section 18, and has excavated it to use as a drainage ditch to carry off excessive seepage, and increased the normal flow of Fremont Slough. It formerly went dry for a very short time in some years, but carried off all the drainage of these four sections for the balance of the year, and therefore it largely determined the height of the water table in these sections.

The defendant district has a large reservoir for storing water in Keith County, and a diversion dam in the Platte River directly north of the east line of sections 7 and 18 of plaintiff's land, for the purpose of diverting water into its canal and conveying said water to a generating power plant, and for irrigating large tracts of land in counties east of the land of plaintiff. Said canal carries a large amount of water, the surface of which is in places six feet above the level of plaintiff's land directly west thereof, and the water has seeped from said canal under plaintiff's land in sections 7 and 18 to such an extent that it has created ponds and waterholes on this land and raised the water table under this tract of plaintiff's land five to eight feet.

The intervener district is also a public corporation organized under the provisions of Senate File No. 310, Laws 1933, ch. 86, p. 337. This law is now found beginning at section 70-601, R. S. 1943. This district has constructed, operates, and maintains an extensive power and irrigation system by diverting waters from the North Platte River, conveying such waters by a canal and reservoir system to a regulating reservoir. Such waters are used for the de-

velopment of electric power, and are returned from the powerhouse through a tailrace to the South Platte River. Such tailrace runs to the north in the section west of plaintiff's section 15, and from its operation certain waters therefrom have seeped under said section 15.

In an honest attempt to drain out said seepage, the intervener district began the construction of a ditch at the east line of section 14 and ran it west over sections 14 and 15, with additional branch ditches therefrom. The ditch thus constructed followed generally the course of Fremont Slough, but straightened out all bends therein, and greatly increased the flow and capacity of said Fremont Slough.

This statement of the facts shows that Fremont Slough has been transformed into a straight, deep drainage ditch to carry off seepage across sections 15, 14, and 18, but that no such work has been done across section 13, which is owned by defendants Talbot, Rice, and Elander, who live on their farms and have claimed all of their riparian rights to the natural waterway, Fremont Slough, and make valid objections to its character being changed entirely into a swift drainage ditch, dug deep to gravel, and which would entirely change, if not destroy its use in connection with their farming operations.

There is evidence in the record tending to show that the seepage in plaintiff's section 15 was caused alone from the construction work of the intervener district, while the seepage condition in plaintiff's sections 7 and 18, some three miles to the east of section 15, might have been due to construction work of both the districts.

These two districts each use a portion of Fremont Slough, but they differ sharply on how it should be maintained, and also on the amount of water which should be allowed to flow therein, and the defendant landowners in section 13 have resisted efforts to change the character of Fremont Slough across that section as desired by either of the districts.

We have held that, when structures are built across or into natural drainways, as Fremont Slough is shown to be

in the case at bar, "It is the duty of those who build structures across natural drainways to provide for the natural passage through such obstructions of all waters which may be reasonably anticipated to drain there, and this is a continuing duty." Webb. v. Platte Valley Public Power and Irrigation District, 146 Neb. 61, 18 N. W. 2d 563.

"A natural stream may be used under certain conditions to conduct irrigation water, but where the water so conducted contributes to an overflow which causes damage, liability therefor attaches to such use." Hagadone v. Dawson County Irrigaton Co., 136 Neb. 258, 285 N. W. 600.

It is shown in the bill of exceptions that both of the districts fully recognized that the Nebraska law provides that "Any such district shall be liable for all breaks, overflow and seepage damage. Damages from seepage shall be recoverable when and if it accrues." § 70-671, R. S. 1943.

Many conferences were held between the plaintiff and officers, engineers, or agents of each district. The plaintiff desired to relieve his land permanently from the danger of seepage rather than to bring many actions at law for seepage damage. To that end he invited and urged the representatives of these two districts to go upon any of his lands and drain the same. The districts promptly acted, and constructed over four miles of ditches on his land, for which plaintiff did not ask nor receive any compensation, either for right-of-way or by way of damages.

We find in the record no formal contracts or agreements, signed up between the parties, about where or how such drainage ditches should be constructed, but gentlemen's agreements were made, orally and very informally, some in offices in town, and others out on the land on inspection trips, and perhaps some by correspondence, and such understandings were carried out in attempts to control seepage on plaintiff's lands.

Substantially, plaintiff says that if it be found that there was no enforcible contract, still these two districts, having freely constructed drainage ditches as desired by the

plaintiff, are now estopped to deny the obligation they have assumed to properly drain his lands. In support of this claim, it is said: "The doctrine of estoppel requires of a party consistency of conduct, when inconsistency would work substantial injury to the other party." 31 C. J. S., Estoppel, § 108, p. 342.

The plaintiff cites in his brief: "In the broad sense of the term, 'estoppel' is a bar which precludes a person from denying the truth of a fact which has in contemplation of law become settled by the acts and proceedings of judicial or legislative officers, or by the act of the party himself, either by conventional writing or by representations, express or implied, in pais." 31 C. J. S., Estoppel § 1, p. 191.

Assuming, but not deciding, that as between the parties thereto the acts and conduct of the defendant district and the intervener district estop them from denying to plaintiff the relief sought against them, still performance cannot properly be decreed in this action, for the reason that to do so would, under the evidence, work irreparable damage to and upon the lands of the defendant landowners, who were in nowise parties to the acts and doings of the two districts by which plaintiff contends the districts were bound. In other words, a valid agreement or arrangement between parties will not be enforced in equity to the irreparable damage of a third party over objection of such third party.

"Where the contract would be hard, unjust, and oppressive to innocent third persons, who have an interest in the subject-matter, equity will not enforce the contract; * * *." 5 Pomeroy, Equity Jur. (2d ed.), § 2216, p. 4955. See, also, 30 C. J. S., Equity, § 106, p. 510; 19 Am. Jur., Equity, § 456, p. 316.

The record in this case fairly discloses that there would be irreparable damage to the lands of the defendant landowners if performance were to be allowed under the prayer of plaintiff's petition and the decree of the district court.

Eugene Meeker, of Denver, testified for these defendant

landowners, and said that in the gravel bed which underlies this South Platte Valley there is a subsurface stream of water which flows along with the surface stream, but its flow is much slower, perhaps only a few inches a day in loess and clay soils, but very much faster through the gravel. Mr. Meeker also testified that lowering Fremont Slough to gravel would take away the benefits of all subirrigation to these landowners, for Fremont Slough operates both as a drain and as a replenishment of water for subirrigation.

The evidence discloses that the cross-appellants are farming, living upon their land, and have riparian rights as to the water of Fremont Slough, having hay ground which adjoins Fremont Slough, from which they have always cut grass; that their lands have been unjustly affected by the drainage ditch deepening and straightening Fremont Slough and which changes the natural sluggish course of this natural stream to a rapid current down a man-made ditch; and that if the ditch is to be dug clear to gravel, as directed by the court's decree, it will damage their lands still more.

The testimony shows that these lands are enriched and dependent for a large part of their production and fertility upon the water which formerly ran in Fremont Slough. One witness testified that Fremont Slough was dry only one year, 1935, and another witness testified that in 1934 it did go dry for about two weeks. It is charged by these cross-appellants that if plaintiff had not elected to put his lands in section 18 to a different use he would have no serious problems confronting him with reference to this water. In short, if he was content to use his lands for wet hay, as formerly, then a higher water table would be beneficial and necessary to him, but if he desires now to use them for cultivation for crops this will require the deeper drainage as now desired by him.

The evidence discloses that from the time the U. S. Government weather station was established at North Platte, a period of 69 years, there has been an 18.9 average rain-

fall. Between 1930 and 1940 there was a drouth period of approximately ten years. Then there was at least four years of excessive and abnormal rainfall, which would greatly raise the underground water level. In addition, the water level in all the lands in controversy is greatly affected by the one great gravel bed which underlies the South Platte Valley clear out into Colorado, and the water filling this gravel bed is affected by snowfall and rainfall in territory far to the west of plaintiff's lands.

The evidence of the cross-appellants shows that the construction already done by the district has damaged their farms in a very serious manner, and that if the decree should be carried out as written it will greatly injure their lands by changing the water level, which formerly was governed by Fremont Slough, and if it is lowered clear to gravel it will have disastrous effects to their farming operations hereafter.

We find that the petition, as well as the amended and supplemental petition of the plaintiff, should be dismissed; that the petition of the intervener district should likewise be dismissed, and that the cross-petitions of the defendant landowners should be dismissed.

It is hereby ordered that the trial court enter a decree in accordance with this opinion, and that the decree and judgment as originally entered by the lower court be reversed and set aside and the cause dismissed.

REVERSED AND DISMISSED.

WENKE, J., participating on briefs.