ELIZABETH M. HARDT, VERA L. COFFEE, AND LORRAINE V. HANSON, APPELLANTS, V. SHORT-LINE IRRIGATION DISTRICT ET AL., APPELLEES.

335 N.W.2d 292

Filed June 17, 1983. No. 82-102.

Winner, Nichols, Meister, Douglas and Kelly, for appellants.

Rick L. Ediger of Raymond, Olsen, Ediger & Ballew, P.C., for appellees Short-Line Irrigation District et al.

Steven C. Smith of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellees Farmers Irrigation District et al. and Pathfinder Irrigation District et al.

BOSLAUGH, McCOWN, and HASTINGS, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

HASTINGS, J.

This action was instituted by the plaintiffs in an action to enjoin the defendants' operation of the Nine Mile Drain and an obstruction at the mouth thereof which diverts water into the Short-Line supply canal, and to recover damages. This operation, plaintiffs claim, has waterlogged and thereby damaged their field adjoining this drain.

The District Court for Scotts Bluff County initially dismissed the individuals named as defendants and no appeal was taken from that dismissal. The District Court went on to find that plaintiffs failed to show that the damage sustained by plaintiffs, if any, resulted from any action of the defendants, either in maintenance of Nine Mile Drain or the diversion structure in the mouth of that drain. Finding that plaintiffs failed to prove defendants caused the alleged injury, the District Court dismissed plaintiffs' petition. We affirm.

On appeal plaintiffs argue that the District Court erred in finding that the plaintiffs failed to prove by a preponderance of the evidence that the ground

water level below their land had been changed by acts of the defendants; in finding that the ground water level under plaintiffs' land was affected by the water level in proximity to the Platte River; in failing to enjoin defendants; and in failing to award damages to plaintiffs.

Since 1967 plaintiffs Lorraine V. Hanson and Vera L. Coffee have owned the land described as: "The North Half of the North Half (N½N½), and Lots One (1), Two (2), Three (3), and Four (4), together with all accretions thereto, of Section Twenty-six (26), Township Twenty-one (21) North, Range Fifty-three (53) West of the Sixth (6th) Principal Meridian, containing 268 acres more or less, according to Government survey; and in addition all accretion lands to said described real estate," subject to a life estate of the third plaintiff, Elizabeth M. Hardt.

The land in question is a 93-acre plot of land suited primarily for agricultural purposes, located on the north side of the North Platte River. This land is bordered on the east by the Nine Mile Drain. The Nine Mile Drain intersects with the North Platte River at roughly a 90° angle. Thus, on two sides of plaintiffs' land there are flowing bodies of water.

At the mouth of the Nine Mile Drain a diversion structure has been built and maintained. This diversion structure causes some of the water flowing out of Nine Mile Drain to be channeled into a canal owned by Short-Line Irrigation District instead of flowing totally into the North Platte River.

In 1971 the river was very high, flooding and washing out what existing diversion there was. In 1972 concrete and rock riprap was added to make the diversion more permanent and secure. In 1975 more structural modifications were made. Steel pilings were placed in the mouth of the drain. This created a throat through which the water from Nine Mile Drain could run unchecked into the North Platte River. During irrigation season boards were placed between these pilings, thus diverting water into

Short-Line's canal. When irrigation season was over these boards would be removed, allowing the water to flow freely into the river again. The structure caused the water level in Nine Mile Drain to be raised above the level of the river.

Of plaintiffs' 93 acres of land, a 30-acre triangle, located in the southeast corner of their land, is continually wet, and therefore does not have as high a per-acre yield as the remaining 60 acres in the parcel. Two sides of this triangle are bordered by water, the North Platte River on the south and Nine Mile Drain on the east. Plaintiffs, while admitting this land has never yielded particularly well, claim their per-acre yield from this land has gotten worse since the above-described structural changes were made in the diversion at the mouth of Nine Mile Drain.

In support of their claim plaintiffs adduced the expert testimony of Mr. Wilbur Rogers. He had ample credentials to establish his expertise in the fields of geology and hydrology. He testified on the basis of his experience with underground waterflow in the general area, and on general rules applying to such flows, that the underground water in this area flowed parallel to that of the flow of the river. That is, it flowed in an east-southeasterly direction. He went on to discuss the effect Nine Mile Drain would have as a body of water flowing north to south, cutting across the path of the underground flow.

Mr. Rogers stated that Nine Mile Drain would have the effect of a hydrostatic dam which would hold up the underground flow, causing the underground water table to the west of the drain to rise to the same level as that in Nine Mile Drain itself. Thus, as the level in Nine Mile Drain rises, a rise that might occur due to the diversion structure, the water level under the plaintiffs' property would also rise, causing plaintiffs' land to become wet.

On cross-examination it was brought out that Mr. Rogers' testimony was based on general knowledge

and not specific facts relating to this land. No tests were run on this parcel of land to determine the direction of ground water flow under this specific parcel of land, or to determine the effect Nine Mile Drain had on this land, in support of his opinion.

A Mr. Meredith Schaff, also a well-qualified expert in this area, was called to testify for the defendants. He testified that there is insufficient data on which to base an opinion regarding the cause of plaintiffs' damp land. He stated that in order to make an accurate evaluation an extensive number of test holes would need to be drilled, soil samples taken, and test wells dug to monitor the effect the water level in Nine Mile Drain has on those ground water levels under plaintiffs' land.

Mr. Schaff stated he could not determine whether it was the river or the drain causing this problem on the basis of the available data; rather, only general conclusions could be drawn. He went on to add that these general conclusions could be affected by several factors which were not known at that time. In short, Mr. Schaff simply felt there was insufficient evidence on which to base an opinion in this matter.

While plaintiffs claim this land is wet and thereby damaged due to the water level in Nine Mile Drain, there is also testimony in the record which shows the land east of Nine Mile Drain suffers from the same problem of wet soil. Mr. Alfred Pieper farms the land bordering the river 2 miles east of the plaintiffs. His testimony indicates that the underground water level is very close to the surface, much the same as plaintiffs' land. Mr. Roland Warner owns the land directly east of Nine Mile Drain which borders the river. He testified that his land was much the same as plaintiffs'. He went on to state this land is not good for farming because the water table is too high. This evidence tends to show, if anything, that the damage to plaintiffs' land is not due to the water level in Nine Mile Drain.

It seems plaintiffs' theory is that the ground water

in this area runs in an easterly direction and that this drain acts as a dam, causing the ground water level to rise on the land west of the drain. As this testimony shows, the problems that plaintiffs have with their land are prevalent throughout this area, whether that land be east or west of the drain.

As is apparent from this discussion, there is much conflicting evidence in this case, particularly in the testimony given by the expert witnesses. Also, the trial court viewed the premises in question.

This is an appeal in equity in which we review the record de novo. A de novo review requires us to reach an independent conclusion as to what findings of fact are required under the pleadings and all the evidence without reference to those reached in the District Court, except, however, that where the credibility of evidence is in conflict, we must give weight to the fact that the trial court saw the witnesses and observed their demeanor while testifying. *Anderson v. Clemens Mobile Homes, ante* p. 283, 333 N.W.2d 900 (1983); Neb. Rev. Stat. § 25-1925 (Reissue 1979).

" 'It is the duty of this court, on review of the findings made by a trial court when it has made an inspection of the premises and has given consideration to the competent and relevant facts revealed thereby, to give weight thereto.' " *Sullivan v. Hoffman*, 207 Neb. 166, 171, 296 N.W.2d 707, 711 (1980).

Plaintiffs' evidence shows only that their land is wet and therefore less productive, and that some structural modifications in the Nine Mile Drain have occurred. Their expert gave an opinion based on general information that this damage was caused by the water in the Nine Mile Drain. This opinion was directly contradicted by the testimony of defendants' expert.

Other than the testimony of this expert, there is no evidence tending to show a causal link between the water level in Nine Mile Drain and any damage to plaintiffs. In fact, there is evidence in the record

tending to show that these lands are not suited for agricultural purposes and the fact that they are not so suited has nothing to do with Nine Mile Drain. The trial court viewed the premises, heard the witnesses, and found the evidence to be insufficient to support plaintiffs' case.

In this case the plaintiffs had the burden of proof. In order to receive the relief they desired, the plaintiffs had to prove, among other things, that it was the acts of the defendants in their maintenance and operation of this drain and diversion structure that caused plaintiffs' injury. We find the testimony of plaintiffs' expert witness inconclusive on the point of causation. As such, plaintiffs have failed in their burden of proof to show defendants caused their injury, and they are therefore entitled to no relief.

After a full review of the record, we find the decision of the District Court to be correct and should therefore be affirmed.

AFFIRMED.