LEO STRICKER AND WILMA STRICKER, HUSBAND AND WIFE, APPELLEES, V. ALEX KNAUB AND PAULINA KNAUB, HUSBAND AND WIFE, ET AL., APPELLANTS.

338 N.W.2d 757

Filed September 30, 1983. No. 82-558.

Robert J. Bulger of Bulger & Jensen, for appellants.

Gary Denton of James R. Hancock, P.C., for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

This is an appeal from a decree permanently enjoining the defendants-appellants from discharging their waste, unused irrigation water onto land owned by the plaintiffs-appellees, and dismissing the former's counterclaim for a prescriptive easement and damages. We affirm.

The errors assigned by defendants raise but a sin-

gle issue, Does the evidence meet their burden of proving a prescriptive easement appurtenant to their lands entitling them to discharge their waste, unused irrigation water onto plaintiffs' land?

We review this case in equity, in accordance with the oft-stated rule that in such cases our duty is to retry the issues of fact de novo on the record and reach an independent conclusion as to what findings of fact are required under the pleadings and all the evidence without reference to those reached by the trial court, except, however, that where the credibility of evidence is in conflict, we must give weight to the fact that the trial court saw the witnesses and observed their demeanor while testifying. Neb. Rev. Stat. § 25-1925 (Reissue 1979); *Hardt v. Short-Line Irr. Dist.*, 214 Neb. 612, 335 N.W.2d 292 (1983).

All of the lands in controversy are located in Morrill County, Nebraska, at Section 21, Township 21 North, Range 52 West, of the 6th P.M. Plaintiffs, Leo Stricker and Wilma Stricker, are husband and wife, and own the southeast quarter of the aforesaid section. Defendants all have an interest in the quarter section immediately north of the Stricker quarter, that is, the northeast quarter of the aforesaid section.

Defendant Paulina Knaub owns the west half of the northeast quarter, hereinafter called the Knaub 80. Her husband, Alex Knaub, manages the land and is also a defendant. Defendant Marie Schmunk is the owner of the east half of that northeast quarter, hereinafter called the Schmunk 80. Her husband, Jake Schmunk, who has died and is a party herein by his wife as the personal representative of his estate, also had an interest in the Schmunk 80. Defendants Randy Meter and Reinhold Meter lease and farm both the Knaub 80 and the Schmunk 80.

The Schmunk 80 has been owned by the Schmunk family since 1923. The Knaub 80 has been farmed by the Schmunks since that same year, but ownership thereof was not acquired by David Schmunk,

the patriarch of the Schmunk survivors, until 1941. Defendants Paulina Knaub and Marie Schmunk are the daughter and daughter-in-law, respectively, of David Schmunk.

Excess irrigation waters flow upon the Stricker land from two sources on defendants' land. The lower half of the Schmunk 80 inclines to the south and is irrigated, primarily with water supplied by an irrigation district, by means of a lateral running east to west across that 80. Excess irrigation waters collect at the end of the crop rows which border on the north boundary of the Stricker land. Prior to 1973, excess irrigation waters from the Schmunk 80 at times meandered south directly onto the grassland in the northeast portion of the Stricker land. At other times the excess waters gathered at the end of the crop rows and flowed west on the Schmunk 80 through the draw or swale on the Knaub 80 and thence down the draw onto the Stricker quarter. In 1973 the Strickers placed this northeast portion of their section under cultivation. Thereafter, the excess irrigation water from the Schmunk 80 crossed over their border and found its way through a shelterbelt on the Stricker farm into the draw. Such was the situation when this litigation was commenced sometime prior to March 17, 1982, when the amended petition contained in the transcript was filed.

The Knaub 80 presents a somewhat different situation. Prior to the spring planting on that 80, a narrow, shallow ditch is dug down the center of that portion of the draw or swale, described above, to the point where the draw crosses onto the Stricker land. Crops are then planted in east-west rows across the draw and irrigated, with water supplied by the irrigation district and wells, by means of north-south laterals running along the eastern and western borders of the Knaub 80. Excess irrigation waters gather in the ditch in the center of the draw and flow south down the draw and across the Stricker farm.

The crops planted across this draw have varied during the years. Beets, beans, and corn have been the most frequently planted crops. The irrigation techniques and amounts of water placed on the land likewise have varied through the years, depending upon the crops planted and the rainfall. When corn is the crop, irrigation begins in early July and consists of 4 to 10 irrigations. If beans are planted, irrigation begins earlier in the summer but is less frequent due to a shorter growing season. If beets are planted, irrigation usually begins in July and continues until October when the irrigation district shuts off its supply of water. At times, when the crop is beets, irrigation continues with the use of well water after the irrigation district has discontinued supplying water. In addition to these variations the last of two wells drilled to supply supplemental irrigation water on the Knaub 80 was drilled some 6 or 7 years prior to the institution of this litigation. The relatively recent use of nitrate fertilizers also required more water than did the earlier phosphate fertilizers.

In 1981 the draw on the Stricker side was graded and planted to grass. This grassy waterway extends on both sides of the center of the draw from the north border to the south border of the Stricker land. At this same time a center pivot irrigation system was installed.

The center pivot crosses the grassy waterway during its sweeps. Cement paths were installed for the pivot to cross over the southern end of the waterway. River rock was placed in the pivot tower tracks crossing the northern end of the waterway. On several occasions the center pivot became stuck in the waterway which becomes soggy from the irrigation waters running from the Schmunk 80 and Knaub 80. On several occasions the center pivot became stuck on the cropland after rains as well.

After an unsuccessful effort by the Strickers to have the discharge of excess irrigation water onto

their land voluntarily stopped, this action followed. The defendants counterclaimed, praying that an easement appurtenant to the Knaub and Schmunk 80s be quieted in the present owners, and for damages arising from the restraining orders previously entered herein.

While this lawsuit is framed in legal theory as one for an injunction based upon a nuisance or continuing trespass, defended by the assertion of a prescriptive right, it is in essence a contest to determine who will bear the cost of keeping the Strickers' center pivot irrigation system functional. If an easement in favor of the defendants were found to exist, the Strickers would in all likelihood find it necessary to construct cement drives across the draw in which defendants' waste, unused irrigation water flows. On the other hand, enjoining defendants from discharging such waters onto the Strickers' land will likely make it necessary for defendants to construct a reuse pit to capture their excess irrigation water.

Our analysis must begin with the general observation that "we are bound by the rule that a prescriptive right is not looked upon with favor and, generally, must be proved by clear, convincing, and satisfactory evidence." *Biegert v. Dudgeon*, 213 Neb. 617, 620, 330 N.W.2d 897, 899 (1983). The party claiming a prescriptive easement must prove that his user was exclusive, adverse, under a claim of right, continuous and uninterrupted, and open and notorious for the full prescriptive period. Proof of the user must be such that the identity of the thing enjoyed may be determined. *Kuhlmann v. Platte Valley Irr. Dist.*, 166 Neb. 493, 89 N.W.2d 768 (1958). As stated in *Kuhlmann* at 513, 89 N.W.2d at 781: "A claimed easement must be viewed from both ends of the prescriptive period. The nature and extent or scope of the user must from the beginning be clearly established. At the end of the period it must appear in retrospect that there has been no material change

or variance from the limits or course adopted or established at the beginning. A lesser user prevents a right to an easement and a greater user is of no importance until the full prescriptive period has elapsed from the initiation of the greater use. The law requires that the easement must be clearly definable and precisely measured." See, also, *Hagadone v. Dawson County Irr. Co.*, 136 Neb. 258, 285 N.W. 600 (1939); *Dunn v. Thomas*, 69 Neb. 683, 96 N.W. 142 (1903). We conclude the evidence fails to clearly, convincingly, and satisfactorily show all of the elements required to establish a prescriptive easement such as sought by defendants.

As to the Schmunk 80, we are not convinced the excess irrigation waters took any particular path to the Stricker land until 1973. Thus, whatever was enjoyed by defendants cannot be considered to have been clearly defined and precisely measured for the 10-year period required by Neb. Rev. Stat. § 25-202 (Reissue 1979). That being the case, we need consider nothing further with respect to that 80.

As to the Knaub 80, the evidence conclusively establishes that the dates of commencement and termination of irrigation varied from year to year depending upon weather conditions, the types of crops grown, and the changes in defendants' farming technology and practices. The fact the last of two wells to supplement the water obtained from the irrigation district was drilled within the 6 or 7 years last preceding this litigation makes clear that the amount of waste water discharged upon the Stricker land has been increasing. The volume of waste water discharged has varied from year to year. Consequently, the nature and extent or scope of the user over any one 10-year period cannot be determined. Stated another way, the evidence fails to establish by the requisite quantum of evidence the lesser user enjoyed by defendants during any 10-year period. The rules articulated in *Kuhlmann*, *supra*, dictate the conclusion that no prescriptive easement to dis-

charge waste, unused irrigation waters onto the Stricker land has been proven with respect to the Knaub 80.

The permanent injunction granted by the trial court conforms in all respects with the applicable rules of law and to our view of the evidence.

AFFIRMED.