Harris v. Steele.

---

JOHN HARRIS ET AL., APPELLEES, V. CHARLES STEELE ET AL., APPELLANTS.

FILED APRIL 21, 1923.    No. 23242.

**Waters:** IRRIGATION: INJUNCTION. Where a landowner, for the purpose of irrigation for the benefit of himself and others, diverts water from a river through lands of others without the latter's consent, or without procuring the right by condemnation proceedings, or without obtaining the consent in writing of a majority of the residents and landowners bordering on a stream or channel through which it is proposed to conduct the water as provided in section 8458, Comp. St. 1922, such landowner may be restrained by injunction from continuing the trespass, even though permission to divert the water from the river has been granted by the board of public works of the state.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*W. D. Oldham* and *W. E. Balcom,* for appellants.

*Sinclair & McDermott, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DAY and GOOD, JJ.

DAY, J.

John Harris and others, plaintiffs, obtained a judgment in the district court for Buffalo county enjoining Charles Steele and others, defendants, from flowing water over and across the plaintiffs' lands; from building a ditch across plaintiffs' lands; and from otherwise trespassing thereon. From this judgment the defendants appeal.

It appears that on December 15, 1921, Charles Steele, one of the defendants, was granted the right by the department of public works of the state to divert five cubic feet of water per second from the main channel of the Platte river for irrigation purposes. Steele's application to the board recited that the lands intended to be irrigated were located in section 14, township 8, range 18, in Phelps county, and comprised a tract of about 380 acres, of which 80 acres were owned by Steele, and the balance by three others. His application also recited that it was proposed to locate the headgate on the south bank of the main channel of the Platte river where it intersects the southwest quarter of the southwest quarter of section 7, township 8, range 18, in Buffalo county. It thus appears that the lands proposed to be irrigated were some four miles distant from the headgate. The project contemplated that the water taken from the river was to be conducted from the intake over and across an old channel or stream connecting the main channel with the south channel for a distance of about a mile and a quarter, and thence along the south channel of the river to a point in section 15 where the water was to be diverted and conducted by canals to the lands proposed to be irrigated. The old channel or stream connecting the main channel with the south channel is referred to in the evidence as the "Harris channel." The testimony shows that the title to the bed of the Harris channel is in the plaintiffs. There is a direct conflict in the testimony as to whether in recent years any water has flowed through the Harris

channel, the testimony in behalf of the plaintiffs indicating that no water flowed through the Harris channel except when the water in the main channel of the river was at a high stage. On the other hand, the testimony of the defendants indicated that there was water in the Harris channel whenever there was any water flowing in the river. It appears that the plaintiff Harris had erected a dam at the mouth of the Harris channel to prevent the waters from flowing through it, and that the bed of the channel, which was about 300 feet wide and with no specially marked banks, was used for pasture and grazing. As we view it, however, the question whether there was flowing water in the Harris channel is entirely immaterial so far as it affects the present controversy.

It further appears that on August 2, 1922, the defendant Steele, in company with a number of his employees, also defendants, went upon the Harris land and offered to pay $25 for permission to open the channel and divert the water from the river into it, which offer was refused by Harris. Defendants thereupon, without leave or permission from any of the plaintiffs, went upon the Harris land and with scrapers opened up a ditch along the Harris channel and diverted the waters from the river into the Harris channel and over and across the lands of the plaintiffs. While thus engaged, the present action was commenced and the defendants ceased work.

The answer of the defendants shows that prior to going upon the land the defendant Steele sought to obtain a right of way over the plaintiffs' lands by condemnation, but upon objection by the plaintiffs the county judge refused to appoint appraisers upon the ground that the project was purely a private enterprise. No appeal appears to have been taken from the order of the county judge, and the correctness of his ruling is not before us.

It also appears that no attempt was made by the defendants to comply with section 8458, Comp. St. 1922, which provides in substance that, before waters to be

used for irrigation can be conducted into or along any of the natural streams or channels of the state, the consent in writing of the majority of residents and landowners bordering upon such stream or channel must be obtained.

It seems clear that the defendants were upon the lands of the plaintiffs without any semblance of legal right, and were trespassers.

Defendants urge that they are financially responsible, and offer to pay any damages which the plaintiffs have sustained by reason of flowing the waters through the land; and that an injunction was not a proper remedy. We are unable to agree with this contention. The plaintiffs have the legal right to own and operate their lands free from the interference of others, in such manner as suits their own convenience or whims; and this right cannot be interfered with except in the manner provided by law. No person's land can be taken from him by another without his consent, upon the mere payment of damages, except in cases where the public interests require that it be done.

The flowing of the water over the plaintiffs' lands is a continuing trespass against which injunction is the proper remedy.

The judgment of the district court is right, and is

AFFIRMED.