CLAUDE O. DRAKE, APPELLEE, V. S. D. RALSTON, APPELLANT.

288 N. W. 377

FILED NOVEMBER 10, 1939. No. 30597.

*Halligan, McIntosh & Halligan,* for appellant.

*Cook & Cook* and *Hoagland, Carr & Hoagland, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

EBERLY, J.

This is an action prosecuted by S. D. Ralston to vacate a default decree entered in this cause (the injunction case) on January 17, 1936, in favor of Claude O. Drake and against S. D. Ralston, wherein the district court found "that said Claude O. Drake is the owner of a 2/11ths interest in the northwest quarter of section 29, in township

12, range 23, and the southwest quarter of section 29, township 12, range 23, Dawson county, Nebraska" (excepting a ten-acre tract thereof specifically described in such decree), and quieted his title thereto against the claims of S. D. Ralston therein evidenced by a judgment particularly described, and enjoined the enforcement thereof against the same.

The application to vacate the judgment herein is based on the fourth subdivision of section 20-2001, Comp. St. 1929, viz., "For fraud practiced by the successful party in obtaining the judgment." There was a trial to the court, and, at the completion of the hearing upon the evidence adduced, the court denied the petition and dismissed the action. The petitioner, S. D. Ralston, who will be hereinafter referred to as appellant, prosecutes this appeal.

The chronology of the events and transactions from which this litigation arises, in part includes the following, viz.:

December 21, 1910, Josephine Pollat, then the owner of the southwest quarter of section 29, township 12, range 23, in Dawson county, Nebraska, reserving to herself a life estate, conveyed the same by deed of general warranty, duly executed and delivered, to her children, who are named therein as grantees, each son and daughter to receive, under the terms of said deed, an undivided 1/11th interest in the lands just described. Included in this deed as grantees were Lewis Pollat and Anna Pollat (now Mrs. Anna S. Drake, wife of Claude O. Drake).

May 25, 1930, Josephine Pollat departed this life testate, then the owner in fee of the northwest quarter of section 29, township 12, range 23, in Dawson county, Nebraska, excepting ten acres in the northwest quarter of the northwest quarter of the northwest quarter. The last will and testament of Josephine Pollat was admitted to probate, and by its terms devised to Lewis Pollat, a son, and to Anna Pollat, a daughter, each an undivided 1/11th interest in the lands in this paragraph described.

May, 1930, the original note of $2,500 was made and delivered by Anna S. Drake and Lewis Pollat to the Stock-

mens State Bank in consideration of a loan of money then made.

March 28, 1932, Lewis Pollat and wife, Ruth, in alleged consideration of $1,000 paid by Claude O. Drake, executed and delivered their warranty deed conveying their 1/11th interest in all the lands hereinbefore described to Anna S. Drake, wife of Claude O. Drake.

December 7, 1932, Anna S. Drake, in consideration of the sum of $1,000 paid by Claude O. Drake, it is alleged, conveyed to him an undivided 2/11ths interest in all the lands heretofore described, as derived from Josephine Pollat.

February 15, 1933, suit was instituted against Lewis Pollat and Anna S. Pollat in the district court for Lincoln county, on a promissory note of $1,900, executed by them in renewal of the balance due on the original $2,500 note executed by them. Personal service of summons was had on all defendants.

December 18, 1934, judgment was entered on this $1,900 note, after trial on the merits, in favor of S. D. Ralston for the sum of $2,189.50 with interest from this date at 8 per cent. It will be noted that this judgment was affirmed in the supreme court. *Stockmens State Bank* (Ralston substituted) *v. Pollat,* January 24, 1936, 130 Neb. 244, 264 N. W. 875.

December 19, 1934, after issuance of execution and return of same *nulla bona* in Lincoln county, a duly certified transcript of this judgment was filed in Dawson county, execution issued thereon, and levied upon the 2/11ths interest in the real estate heretofore described as conveyed to Claude O. Drake by his wife, Anna S. Drake, as the property of the wife, and execution sale of said premises was advertised for February 15, 1935.

February 15, 1935, Claude O. Drake instituted an action for an injunction and to quiet title to the premises levied upon. A temporary injunction was allowed, and together with summons issued on the same day was on February 15, 1935, served upon S. D. Ralston, and upon Henry E.

Ash, sheriff of Dawson county. This summons was unindorsed and no pleadings were filed by Ralston or the said sheriff in this proceeding until the institution of the present application to set aside the judgment entered, and no appearance made whatever. This proceeding will be hereafter referred to as the "injunction case."

April 18, 1934, Claude O. Drake and Anna S. Drake et al., plaintiffs, commenced an action for partition in the district court for Dawson county, the object and prayer of which was to secure a partition of all the lands formerly owned by Josephine Pollat, deceased, as hereinbefore described. Service of process on all parties in interest was had and issues joined. This case will hereinafter be referred to as the "partition proceeding."

December 6, 1934, judgment confirming shares and directing partition was entered, adjudging Claude O. Drake the owner of an undivided 2/11ths interest therein.

December 20, 1934, S. D. Ralston caused to be filed in the partition proceeding a petition in intervention, which was in form a creditors' bill; this in appropriate language alleged the rendition of petitioner's judgment against Anna S. Drake and Lewis Pollat, the issuance of execution thereon in the county of rendition and the officer's return thereto of nulla bona, the filing of a certified transcript thereof in Dawson county, the issuance of execution thereon and the levy of such execution on the undivided 2/11ths interest in the land hereinbefore described (being the same land conveyed by Anna S. Drake to her husband, Claude O. Drake) ; alleged that the conveyance last referred to was not bona fide, but made without valuable consideration, with fraudulent intent by the parties thereto of cheating, hindering, delaying and defrauding the petitioner, S. D. Ralston, in the collection of his said judgment. This petition in intervention contained an appropriate prayer for the application of said 2/11ths interest in the lands heretofore described to the satisfaction of S. D. Ralston's judgment, and costs accruing thereon. Process on this pleading was duly issued and served upon the parties in interest.

January 21, 1935, a demurrer was filed to this petition in intervention by Claude O. Drake and Anna S. Drake, which, upon hearing, was on February 7, 1935, overruled, and the order required demurrants to answer intervener's petition within 30 days from this date.

March 18, 1935, answers of plaintiffs Claude O. Drake and Anna S. Drake to the petition in intervention were filed, and issues joined. In these pleadings substantially the same facts were alleged as were set forth by these parties in the injunction case.

October 23, 1935, a sale of the premises by the referee was had and report thereof filed on October 24, 1935.

January 17, 1936, the report of sale was confirmed, deed ordered, and proceeds of sale distributed. This decree provides specially, viz.:

"It is further ordered and decreed that the share of the plaintiff, Claude O. Drake, in and to the proceeds of the sale of said land as shown in the judgment of partition entered in this cause, be and the same hereby is impounded with the clerk of this court until the further order of this court and until the determination of the claim of the intervener, S. D. Ralston, and the referee herein is hereby ordered and directed to pay said sum to the clerk of this court.

"The plaintiff, Claude O. Drake, excepts the impounding of the money with reference to his share in regard to the claim of the intervener, S. D. Ralston, in open court."

This decree, though made January 17, 1936, was filed and recorded January 21, 1936.

January 17, 1936, after the decree of confirmation had been announced from the bench and entered in the partition proceeding, attorney E. E. Carr, in the absence of S. D. Ralston and his counsel, called up and caused to be entered a default decree quieting title in the injunction case of Claude O. Drake v. S. D. Ralston.

February 16, 1936, the October, 1935, term of the district court for Dawson county adjourned *sine die.*

December 15. 1936, the amended answer of Claude O.

Drake and Anna S. Drake was filed in the partition proceeding, pleading the judgment entered in the injunction case by default on January 17, 1936, as *res adjudicata* and as in bar of S. D. Ralston's demands.

The actual contention of appellant in this case is, viz.: That prior to January 17, 1936, it had been agreed between R. H. Beatty, as attorney for S. D. Ralston, and E. E. Carr, as attorney for Claude O. Drake and Anna S. Drake, Lewis Pollat and Ruth Pollat, that partition proceedings should proceed, and that said property should be advertised and sold in said partition proceeding, and the rights of said intervener and Claude O. Drake, Anna S. Drake, Lewis Pollat and Ruth Pollat could be determined, and that a sale in said partition proceedings would be for the best interests of all parties concerned; that the rights of said parties in and to said real estate or the moneys to be derived from the said sale of said real estate would be tried upon the issues joined in the partition proceeding, and no further action would be taken in said injunction case; that this agreement was relied upon by appellant and no pleadings filed in, or attention paid to, the injunction case by him or his attorneys; that the defendants Claude O. Drake and Anna S. Drake, in violation of such agreement, secured the entry of a decree quieting their title to the 2/11ths interest in said land and now plead the same in bar to the claims of appellant, Ralston, in the partition proceeding.

Excepting the fact of pleading in bar, the foregoing is substantially denied by the Drakes.

In support of appellant's contention, attorney Beatty testified, in reply to an interrogatory by Victor Halligan, viz.:

"Q. And will you state what talk you had there with Mr. Carr at that time? A. Mr. Carr came into our office. You and I were sitting in the office, and Mr. Carr had just brought this injunction suit and prevented the sale on an execution that I had issued on the Lincoln county judgment. And I said to him, 'I see that you brought an

injunction suit to enjoin the holding of our sale in Dawson county,' and he said, 'Yes, I did,' and he said, 'I don't see any use in having two or three lawsuits pending over the same thing.' And I told him then, I said that that was your opinion, that you had also said there was no reason why the whole thing couldn't be determined in the partition suit, and that I saw no reason why the whole matter couldn't be determined in the partition suit, and he said that was his idea, too. Q. Now, after that talk you had there, did you take any steps in the injunction suit at all? A. No; I took no steps in the injunction suit."

He also testified, as to another conversation had by telephone between himself and attorneys Stewart and Carr, viz.:

"The Court: Just tell who you talked with. A. Yes, sir; that's what I'm doing. Mr. Stewart called me on the telephone, long-distance, and told me that Judge Nisley was in Lexington, and that they were having a session of court, and he said that he wanted to take a confirmation in the partition case of Drake against Morrow, I think is the name the case goes under, and wanted to know if I wanted to come down; and I told him I didn't want to come unless it was necessary; and he said they wanted to take a decree of confirmation, and I told him that that would be all right with me, to go ahead and take the decree of confirmation, provided that in the decree of confirmation it was provided that the 2/11ths interest, the money from the 2/11ths interest, should be impounded in the hands of the clerk of the district court until it was determined as to who had title to it in the partition suit; and Mr. Stewart said to me, 'Mr. Carr is right here. I'll let you talk to him.' And I then talked to Mr. Carr, and I told Carr that it would be perfectly agreeable with me to go ahead and take the decree of confirmation in the partition case provided the court entered an order that the money be impounded for the 2/11ths interest in the hands of the clerk of the district court, pending the rights between Ralston and his clients being determined in the partition

case. Mr. Carr said that was all right with him, that he didn't want it to appear on the face of the record, but as far as his clients were concerned that he was consenting to the order impounding the money, and that he had no objection to it being put in there if I would permit him to put an exception in the journal; and I told him that that would be perfectly agreeable with me, that he could put an exception in the journal; and he said all right, they would go ahead, then, and take the decree. Q. Now; that was virtually the content of the conversation, as you recall it? A. That is the substance of the conversation. * * * Q. After that, was there forwarded to you the journal entry for you to approve? A. There was; Mr. Stewart sent the journal entry to me for my approval, in accordance with our conversation."

In this connection, we note that defendants Drake presented a motion to strike all of this testimony because not reduced to writing, and "is in violation of standing orders of this court." This motion was overruled.

On the subject of the first conversation referred to above, attorney E. E. Carr testified as follows:

"Q. Well, I asked you if you had been in Halligan, Beatty & Halligan's office at a time about thirty days after the injunction suit was started? A. Well, I think that would be about—Oh! after the injunction suit was started? Q. After the injunction suit was started? A. No. I would say it was before that, Mr. Cook. Q. I will ask you whether or not at a time about thirty days after the 15th day of February, 1935, or at any other time, you were in the office of Halligan, Beatty & Halligan, at a time when Mr. Beatty and Mr. Halligan were present, and if at that time or at any time you stated, in reply to a question by Mr. Beatty as to the Ralston sale, that you had enjoined the sale, or in which Mr. Beatty stated to you that he had been informed that you had enjoined the sale, and if you then stated to Mr. Beatty that you didn't see any use in having two lawsuits involving the same matter, and that you thought the matter could all be deter-

mined in the partition case, and if Mr. Beatty said to you that that was Mr. Halligan's idea, and it was all right with him? A. No, sir. I did not. Q. Did any such conversation occur between you and Mr. Beatty and Mr. Halligan, or either of them, at any place, at any time? A. No, sir. I will say this: There was a conversation in Mr. Beatty's office, in their library, one time, relative to the hearing on the partition suit, about that matter coming up. The injunction suit was never mentioned in their presence, that I know of. I didn't even know they were attorneys for Ralston in the injunction suit."

With reference to the matters discussed immediately prior to the confirmation, the following testimony was given by attorney Carr:

"Q. Now, just state as well as you can the conversation you had with Mr. Stewart with reference to this partition case. A. Well, as I recall it, when I came here Mr. Stewart and Mr. Johnson called me out in the clerk's office and said, 'Now, we would like to have this sale confirmed.' * * * And Mr. Stewart said, 'You have got a good price there. Ten thousand dollars is all that land will bring, and the bidder is going to back out unless that sale is confirmed.' And I told him that we could not consent to any confirmation because there were other issues involved in that case, and if a confirmation came up without a determination of our interests it might jeopardize our rights to that money, and we wouldn't consent to it; and he said, 'Well, why can't we put that in court, tie it up in court?' And I recall definitely of telling Mr. Stewart that I was afraid of any order taking this property and converting it into personalty and tying it up in court under those conditions, and that I wasn't particularly objecting to the confirmation only as it affected the distribution of those proceeds, but that I thought we were entitled to that money. And they insisted on the confirmation coming up; and then he called up Mr. Beatty or Mr. Beatty called him. I don't know just how it was. I recall the conversation between Mr. Stewart and Mr. Beatty in which he asked Mr. Beatty

if he had any objection to the money being put up with the clerk of the district court. Q. I will ask you whether or not you talked to Mr. Beatty at all over the telephone that day? A. No; I did not."

It may be said that throughout the record there appears a definite and substantial contradiction in the testimony of attorney Carr and attorney Beatty on the subject of "trying out" the contest on the issues framed in the partition case and letting the injunction case "stand open." Attorney Beatty testified that his partner, Victor Halligan, was present and participated in the first conversation with attorney E. E. Carr held in their office, but Mr. Halligan, though present in court and participating in the trial as an attorney, failed to testify. Attorneys Stewart and Johnson were present when the telephonic conversation was had between attorney Beatty at North Platte and attorney Stewart at Lexington, relative to the confirmation of the partition sale. As part of this conversation attorney Beatty testified that he talked with attorney Carr with reference to the final determination of the disputed questions in the partition proceeding. Mr. Carr's statement is that at this time he had no conversation whatever over the telephone with attorney Beatty, and in this he is not contradicted by the other witnesses who were present at the time with him at Lexington.

The form of the issues here presented imposed on appellant the burden of establishing the allegations of his application to vacate the decree of January 17, 1936, by a preponderance of the evidence. The trial judge, who personally heard the proof adduced and observed the demeanor of the witnesses as they testified determined this issue adversely to appellant's contention. The question of fact which evidently was decisive in the district court was whether the oral agreement with reference to the trials of the injunction case and the partition proceeding had been actually made and entered into by these attorneys.

True, the powers possessed by attorneys by virtue of their office are limited. Our statute provides: "An attorney

or counselor has power: * * * Second. To bind his client by his agreement in respect to any proceeding within the scope of his proper duties and powers; but no evidence of any such agreement is receivable, except the statement of the attorney himself, his written agreement signed and filed with the clerk, or an entry thereof upon the records of the court." Comp. St. 1929, sec. 7-107.

The rule early announced in this state was: "Written agreements of attorneys, or those entered into by them in open court, in regard to the disposition of cases, will be enforced; but oral agreements, entered into out of court, will not be recognized or considered." *Rich v. State Nat. Bank*, 7 Neb. 201. See, also, *German-American Ins. Co. v. Buckstaff*, 38 Neb. 135, 56 N. W. 692; *Anderson v. Walsh*, 109 Neb. 759, 762, 192 N. W. 328.

In connection with the *Walsh* case cited above, it will be noted that in the instant case we are confronted with a motion to strike the oral evidence relating to the claimed agreement as incompetent. However, this may not be the decisive question in the instant case. As it comes to this court, the appellant carries the burden of proof. An attorney on each side constitute the sole witnesses, whose testimony must determine the existence of the disputed oral agreement. Neither witness is impeached. Under these circumstances, the fact becomes important that the trial judge, who personally heard the testimony adduced and observed the demeanor of the witnesses when testifying, accepted the testimony tendered by the appellee rather than the evidence produced by the appellant. Therefore, on trial *de novo*, this court, in view of the entire record, finds for the appellee and against the appellant.

The judgment of the district court is, therefore,

AFFIRMED.

CARTER, J., dissenting.

It is the contention of the appellant in this case that his attorney entered into an oral stipulation with the attorney for appellees to the effect that a partition suit then pending should proceed to trial and. that the rights

of the parties to the moneys derived from the sale of the lands involved should be tried out in the partition proceeding instead of in an injunction suit that had been commenced by Claude O. Drake, one of the appellees. During the pendency of the partition action, without the knowledge or consent of appellant's attorney, appellee's attorney secured a default decree in the injunction suit in which title to appellee's claimed interest was quieted in him. This decree was then successfully pleaded as *res adjudicata* of the matters involved in the partition suit and deprived appellant of a trial of his claims on the merits.

That conversations were had between the attorneys for the respective parties relating to the disposition of the cases is amply borne out by the evidence. It is true that the evidence is in conflict as to whether the agreement was actually made by the two attorneys. It is evident, however, that both attorneys knew that the case was to be contested, and that neither party intended to default. Under such a state of facts the trial court should have vacated the default decree procured by appellee's attorney and permitted appellant to appear and defend.

This court has often said that attorneys are officers of the court, over whom the court may exercise a limited amount of supervision. Litigants generally place some confidence in these judicial assertions. One attorney ought not to be permitted to take a default decree favorable to his client, when he must have known from the circumstances surrounding the litigation of the intention of the other party to contest it, especially where it appears that the other attorney has been lulled into a feeling of security by reason of conversation had between them.

The purpose of courts is to arrive at justice between litigants who are unable to solve their own difficulties. To do so in an efficient way, rules must be adopted and followed. But a litigant, free from fault and without knowledge of the real facts, ought not to be deprived of his defense because officers of the court disagree as to the re-

sult of conversations had between them when both knew that each had interests which he desired to maintain. The enforcement of rules ought not to become such a fetish that the objectives of the law are lost and innocent litigants thereby compelled to risk their cases in a game of wits instead of in an impartial trial on the merits.

In my judgment, the trial court should have vacated the default judgment, and it was an abuse of discretion constituting reversible error on his part not to do so.

I am authorized to say that Simmons, C. J., and Johnsen, J., concur in this dissent.