ORVIL E. KUHLMANN, APPELLEE AND CROSS-APPELLANT, V. PLATTE VALLEY IRRIGATION DISTRICT, A CORPORATION, APPELLANT AND CROSS-APPELLEE.

EMMETT P. KUHLMANN ET AL., APPELLEES AND CROSS-APPELLANTS, V. PLATTE VALLEY IRRIGATION DISTRICT, A CORPORATION, APPELLANT AND CROSS-APPELLEE.

89 N. W. 2d 768

Filed April 25, 1958. Nos. 34309, 34310.

*Baskins & Baskins,* for appellant.

*Crosby, Crosby & Nielsen,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, and BOSLAUGH, JJ.

BOSLAUGH, J.

The purpose of this litigation is to prevent appellant by permanent injunction from discharging water from a lateral of the district into Scout Creek and transporting it thereby to and into the North Platte River; the recovery from appellant of damages caused appellees, as they claim, by discharging irrigation water from the works of the district into Scout Creek; and general equitable relief.

The issues of these cases relating to the right of appellees to have a permanent injunction against appellant preventing it from discharging irrigation water from its works into Scout Creek were by stipulation of the parties and the approval and order of the trial court tried simultaneously and the proof offered and received on the trial of these issues was made part of the record of

each of the above-described cases. There was an appeal to this court in each of the cases from the findings and judgment of the trial court of the issues concerning the remedy of injunction and the appeals in this court, identified as case No. 34309 and case No. 34310, were by this court consolidated. The appeals are essentially identical and will be disposed of as though there was but a single appeal. The appellees in the two appeals will be referred to by the respective name of each or collectively as appellees.

Appellees alleged in substance, as the basis for the permanent injunction they sought, these matters:

Orvil E. Kuhlmann is the owner of parts of Section 19, Township 14 North, Range 30 West of the 6th P. M., Lincoln County, described in detail in the petition in the case brought by him. Emmett P. Kuhlmann and Willard D. Kuhlmann are the owners of parts of Sections 19 and 29, Township 14 North, Range 30 West of the 6th P. M., Lincoln County, described in detail in the petition in the case brought by them.

Scout Creek, a natural watercourse, meanders over and across the lands of appellees. Appellant, a Nebraska corporation and an irrigation district, has acquired and uses ditches to carry water for irrigation purposes west, northwest, and southwest of the lands of appellees and in the vicinity of Scout Creek. Scout Creek, under natural conditions, transports a small stream of water except when its flow is augmented by run-off waters caused by heavy rain in the area which it drains and thereby Scout Creek has in instances run bank full prior to the happening of the matters complained of herein but the creek has only infrequently experienced flood stage from natural causes. Appellant caused a ditch to be excavated between its irrigation system and Scout Creek west of the lands of appellees to permit waters not used by irrigators along the irrigation system of appellant to discharge and flow into and through the creek to the river

east of the lands of appellees. Scout Creek has within the last 4 years, due to the water placed therein by appellant by the means aforesaid, overflowed its banks frequently each year; has thereby flooded the lands of appellees; and has caused them continuing and increasing and irreparable damage to their lands and annual crops planted and growing thereon. Water put by appellant into the creek has caused it to change its course, has caused continuing and increasing erosion, has washed out bridges, has endangered buildings, and has substantially lowered the water table of the lands of appellees. The flooding of the lands of appellees, because of the situation which exists, causes the water to be trapped upon their lands so that the productivity of the flooded lands has been destroyed. Appellees have utilized and exhausted the means known to them to prevent and minimize the damage done and threatened to their land and property by the water discharged by appellant into Scout Creek as aforesaid without material or successful result. Appellees have advised appellant of the facts and requested and demanded that the condition created by it be remedied but appellees have secured no permanent relief by consultation with or demands made upon appellant in this regard. The officers of appellant have advised appellees that nothing can be done to improve their situation and that appellant must continue to discharge irrigation waters into the creek as it has done in the past because of the nature of the operation of appellant. Scout Creek has been and is unable to accommodate within its banks the discharge of water from the system of appellant into it during the last 3 or 4 years and the available remedy for the situation of which appellees complain is the prevention of the discharge of irrigation water from the works of appellant into Scout Creek.

Appellant by answer admitted the ownership of the lands described in the petitions of appellees and that Scout Creek crosses their lands, denied all other mat-

ters pleaded by appellees, and alleged new matters as follows:

Scout Creek has two branches west of the lands of appellees. One extends more than 5 miles to the southwest and the other about 3 miles northwest from where they converge near the west line of Section 19, Township 14 North, Range 30 West of the 6th P. M., in Lincoln County. Appellant has an irrigation lateral, known as lateral No. 23, the course of which is recited in detail in the answer but it is not necessary to do so here. The east terminal of the lateral for many years was at the west line of Section 23, Township 14 North, Range 31 West of the 6th P. M., in Lincoln County, and any waste water from it was spilled into the road ditch and carried south to the southwest corner of Section 23 and thence east to the south branch of Scout Creek. Subsequently the lateral was extended eastward with its east terminus in Section 24. More than 10 years ago appellant excavated a ditch from the east end of the lateral to the south branch of Scout Creek and thereby spilled the water from the lateral into the creek. Since and during said time the ditch has been used as a spillway to return the waste water from the lateral to the North Platte River. Appellant has obtained by user an easement in Scout Creek across the lands of appellees. The quantity of water emptied into and transported through Scout Creek by appellant to the North Platte River has not materially varied during the last 20 years. Appellant asked the court to deny the relief sought by appellees, to find and adjudge that appellant has an easement across the lands of appellees in Scout Creek for the transportation of the waste water from the lateral to the river, and for general equitable relief.

The reply of appellees denied the new matter in the answer of appellant.

The trial court found generally for appellees on the issues relating to their right to an injunction as prayed

for by them; that appellant should be enjoined from continuing to spill water in any manner from lateral No. 23 into Scout Creek at any place along the creek without the consent of appellees or their successors in interest; that the water spilled into Scout Creek by appellant increased the flow of it through the lands of appellees; that appellant had failed to establish an easement to flood the lands of appellees because of the uncertainty of the extent and manner of the use during the claimed prescriptive period; that the proof as to damage claimed to the lands of appellees and the causation thereof was uncertain and speculative and no damages could be assessed or allowed; that because thereof appellees should not be permitted to proceed further to try the issue of damages claimed due them from appellant; and that the cause of action for damages should be dismissed with prejudice. Judgment was rendered by the district court in harmony with the findings. The motion of appellant for a new trial and the motion of · appellees for a new trial as to the issue of right to and the amount of damages only were each denied. Appellant has prosecuted an appeal and appellees have cross-appealed as to the issue of damages and the adjudication thereof adverse to them.

Appellant had an irrigation supply canal referred to in the record as lateral No. 23 and hereafter spoken of as the lateral. For many years and until soon after the year 1930 it came from the west and had its east terminus at the road ditch on the west of Section 23, Township 14 North, Range 31 West. There was only a small amount of water spilled from the lateral at that time but whatever there was went south in the road ditch to the southwest corner of Section 23 and turned east along U. S. Highway No. 30 to where it intersected the south branch of Scout Creek. The lateral was soon after 1930 extended east to and upon what is called in the record the Rowley land which is a part of Section 24, Township 14 North, Range 31 West. There was a re-

stricted amount of water wasted from the east terminus of the lateral during the dry years of the 1930's following the extension of the lateral until the district was able to purchase storage water. One witness described the condition in the dry years as appellant having 30 to 65 second feet of water at the headgate and 200 dry men calling for the water. During this period appellant often made hay dams in the river in an attempt to induce water to flow into its works from the river. Its water was so limited that appellant practiced a relay system in furnishing water to its users from the lateral. The water therein was relayed to the users commencing at the west end and continuing eastward. The first user was supplied water for a certain period, depending on the area to be watered. The next user was then furnished water for his land on a similar basis. This method was followed until all users were served if the supply of water was sufficient. At times it was not when there was a deficiency of precipitation. The relay system was used by appellant as late as 1950. The date appellant first purchased storage water is not shown by the record but it is definite that appellant has since the year 1950 distributed to its users storage water in addition to what direct-flow water is secured under its appropriation of 202 second feet. Scout Creek had a continuously flowing stream of water until the year 1924 when a drainage ditch was constructed a short distance south of it and generally parallel with it from west of the area involved in this case and extending east to the North Platte River. Since then the creek has had no natural flow of water except during periods of run-off resulting from rains or melting snow.

The east end of the lateral when it was extended into the Rowley land terminated in a pasture near a cottonwood grove that was the east line of the west eighty of the Rowley land. There is evidence that the lateral followed a ridge that was higher than the ground on either side of it and that any water discharged at

the east end of the lateral went partly to the north into what is spoken of in the record as "marsh," "marshy land," or "Halligan's slough," along and through which the north branch of Scout Creek passed and to the east thereof it joined the south branch of Scout Creek west of the lands of appellees and the two formed Scout Creek. It proceeded from and through the lands of appellees in an irregular course to and emptied into the North Platte River. There is also evidence that some of the water from the lateral went into a "low spot" on the Rowley land and finally reached the south branch of Scout Creek.

Appellant excavated a ditch in May of 1947 that connected the east end of the lateral with the south branch of Scout Creek. This was on a part of the Rowley land described as the southeast quarter of Section 24. Appellant has since used the artificial ditch to discharge and spill water from the lateral into Scout Creek. This has been and is the method by which appellant returned unused irrigation water taken by it from the North Platte River to that stream.

The overflow of Scout Creek in the vicinity of and on the lands of appellees before the construction of the ditch on the Rowley land which connected the lateral and the south branch of Scout Creek occurred only on the occasion of heavy run-off of surface water. One of the owners of land involved in this case testified he sustained no damage by any flooding before the construction of the ditch and his evidence in this respect is not controverted. During what is spoken of in the record as "later years" appellant bought storage water. This was after 1947 when the artificial ditch was constructed by appellant. Appellant, because of the storage water available to it, changed its plan of operation and thereafter attempted to keep its ditches full of water. The creek would overflow at night because of the increased discharge from the lateral. There was more water than the users wanted and all of them would

sometimes let it go by in the lateral; hence the increased discharge of water into the creek. If there was a rain the users would discontinue taking water and it would be discharged from the lateral into the creek. There were times when the lateral spilled considerable quantities of water because some or all of the users would, without notice to the ditch rider, discontinue taking water. If the headgate was not closed, water would go down the lateral into Scout Creek and it would frequently overflow. This had been the custom and result for years.

Appellee Orvil E. Kuhlmann owned land in Section 19, Township 14 North, Range 30 West, which was west of the land of appellees Emmett P. and Willard D. Kuhlmann in Section 19 which extended east to and bordered on the North Platte River. Orvil E. Kuhlmann testified: After the ditch was made by appellant connecting the lateral with the south branch of Scout Creek as above described there was a material change in the water that flowed in the creek. The water would come down the creek suddenly, it would fill rapidly, and the creek would many times overflow its banks. In 1954 the water was high enough that the witness was compelled to construct a dike along the south bank of Scout Creek north of the buildings on his land to keep the water out of his buildings and he has since maintained the dike as a necessary protection. He had no such experience before the artificial ditch was made. He followed the water up the creek and found it was coming from the lateral, through the ditch made by appellant, into Scout Creek, and thence to and upon the lands of appellees. The floodwaters substantially destroyed about 10 acres of good grassland located a short distance northwest of the buildings on his land and north of the creek. The floodwaters filled a slough on his land and seeped between 40 and 60 acres of meadow. The situation was such that the floodwater was trapped in this area. Before the meadow was flooded it had been good hay

land. Afterwards it was destroyed for practical purposes. The witness made a record of the times he knew Scout Creek overflowed and flooded on his land during the irrigation season of the years 1954, 1955, and 1956. Numerous times the creek was out of its banks during this period. He investigated and found that the water causing the overflow was coming from the lateral, through the artificial ditch, and down Scout Creek. The witness observed damage to the land of appellees Emmett P. and Willard D. Kuhlmann from east of his land to the river. A part of the land of Emmett P. and Willard D. Kuhlmann directly north of the buildings on their land which had been good grassland had been substantially destroyed by flooding and seepage caused by the overflow of Scout Creek. There was other damage which consisted of the banks of Scout Creek being washed and caved in and the creek had deepened 2 or 3 feet. The bottom of it in prior years was mud and vegetation but now the bed of the creek is gravel. The increased water in the creek had cut it down to gravel. The course of the creek changed in some places on the lands of the appellees. The cutting of the bed of Scout Creek to gravel lowered the water table under the land in Section 29 and made it impossible to irrigate that land. There were numerous occasions when there had been no recent rain that the witness observed high water in the creek east of the east end of the lateral. This was true from 1947 or 1948 to the time of the trial of this case. He had seen water flowing in Scout Creek east of the outlet of the lateral when there was no water in Scout Creek in Section 25, Township 14 North, Range 31 West, southwest of the connection of the artificial ditch made by appellant and Scout Creek. The witness did not give written consent to appellant to spill or flow any water into or through Scout Creek.

Appellee Emmett P. Kuhlmann testified: He had lived on the land he owned that is involved in this litigation since 1928. There was no ditch that connected the

east end of the lateral and Scout Creek in 1946. The ditch that provided this connection was there to his knowledge in 1949 or 1950. The water flowing in Scout Creek had increased and in 1950 he investigated to ascertain the cause of it. He found it was coming from the lateral. He on one occasion irrigated 40 acres of ground in less than 24 hours with water appellant had discharged from the lateral. There had not been rain recently before that time and there was no water then in the south branch of Scout Creek. His land in Section 29 had been irrigated as long as he could remember. The bottom of the creek was lowered to gravel. Thereafter when water was put on the land in Section 29 it would go to gravel. It pulled over to the creek and the water went down to the river instead of remaining in the soil. The banks of the creek were eroded and the creek formed channels other than the original one. The damage to the meadow on the land of the witness was almost complete.

A member of the board of directors of appellant from 1944 through 1952, a Mr. Wilson, testified that on several occasions while he was director, Henry Kuhlmann, the father of appellees and the former owner of the lands now owned by appellees, would call Mr. Wilson and complain about water that was flooding the Kuhlmann land. The director said the source of the water complained of was the lateral. He said he would turn the water out of the lateral. He said that this would happen after a rain or when the people would shut off on 23 and the water would go down the wasteway and Henry (Kuhlmann) would call Mr. Wilson. He said he and Henry Kuhlmann got along pretty well on that arrangement.

Harris v. Steele, 110 Neb. 213, 193 N. W. 268, declares: "Where a landowner, for the purpose of irrigation for the benefit of himself and others, diverts water from a river through lands of others without the latter's consent, or without procuring the right by condemnation

proceedings, or without obtaining the consent in writing of a majority of the residents and landowners bordering on a stream or channel through which it is proposed to conduct the water as provided in section 8458, Comp. St. 1922 (now § 46-252, R. R. S. 1943), such landowner may be restrained by injunction from continuing the trespass * * *." In the opinion it is said: "Defendants urge that * * * an injunction was not a proper remedy. We are unable to agree with this contention. The plaintiffs have the legal right to own and operate their lands free from the interference of others, in such manner as suits their own convenience or whims; and this right cannot be interfered with except in the manner provided by law. * * * The flowing of the water over the plaintiffs' lands is a continuing trespass against which injunction is the proper remedy."

This court said in Hagadone v. Dawson County Irr. Co., 136 Neb. 258, 285 N. W. 600: "The owner of real estate has the legal right to use and operate such land free from repeated acts of trespass, and an injunction will issue to restrain such acts, especially where committed under a claim which indicates that the trespass will be continued."

In Lackaff v. Bogue, 158 Neb. 174, 62 N. W. 2d 889, it is said: "In such cases, equity looks to the nature of the injury inflicted, together with the fact of its constant repetition or continuation, rather than to the magnitude of the damages inflicted, as the ground of affording relief." See, also, Fenster v. Isley, 143 Neb. 888, 11 N. W. 2d 822; Faught v. Platte Valley Public Power & Irr. Dist., 147 Neb. 1032, 25 N. W. 2d 889.

The acts enjoined by the trial court were committed under a claim and circumstances which indicate that the trespass will be continued and repeated. Appellant is committed to serve its users of water from the lateral to and including the Rowley land. The needs of the users require storage water and the abandonment of the relay system. Appellant is obligated by law to return

any unused irrigation water to the North Platte River. § 46-265, R. R. S. 1943. So long as rainfall run-off and water discharged from the lateral must flow through Scout Creek as it does now, the injury to appellees will continue. Appellant cannot predict rainfall and denial of irrigation waters so that spill water of an amount short of overflow and flooding can be planned. It is obvious that damaging use and nondamaging use are in this instance inseparable. This was probably apparent when the premises were viewed by the trial judge. Appellant is unyielding in its insistence of necessity and right to maintain and continue its operations as it has conducted them in the past.

Appellant argues that in the year 1947 Rowley, the owner of the land where the work was done, constructed a drainage ditch which connected the east end of the lateral with Scout Creek so that the discharge of irrigation water from the lateral was conducted to and placed in Scout Creek; that the excavation was done by a contractor at the instance of Rowley and he paid the expense of it to the contractor; that the ditch was made without the knowledge or consent of the appellant; that the evidence is that appellees suffered no damage to their lands before the drainage ditch was constructed in 1947; that appellees failed to establish that the injuries of which they complain would have occurred if the drainage ditch had not been constructed but, on the contrary, their proof shows that it was "the construction of that ditch that caused their trouble"; that there was therefore an intervening cause that produced any damage sustained by appellees; that the intervening cause was the construction of the drainage ditch which connected the lateral and Scout Creek; and that appellant "had nothing to do with that intervening cause and that it had not even any knowledge of it."

The assertion and conclusion of appellant that the evidence of appellees "affirmatively shows that it was the construction of that ditch that caused their (appel-

lees') trouble" is correct. The record shows this without dispute. The futility of the argument and conclusion of appellant is that the record shows that there is no basis of fact for either. The answer of appellant, one of the pleadings on which this case was tried, alleges that defendant (appellant in this court) built a ditch that connected the east end of lateral No. 23 with the south branch of Scout Creek upon the southeast quarter of Section 24; and that the spill water from lateral No. 23 has been spilled and emptied into Scout Creek and the same has been used as a spillway to return waste water from lateral No. 23 to the North Platte River. Barkalow Bros. Co. v. English, 159 Neb. 407, 67 N. W. 2d 336, declares: "The allegations of a pleading are always in evidence for all purposes of the trial. * * * A party may at any and all times invoke the language of the pleading of his adversary on which the case is tried, on a particular issue, as rendering certain facts indisputable; and in doing this he is neither required nor permitted to offer the pleading in evidence. * * * Admission made in a pleading on which the trial is had is more than an ordinary admission. It is a judicial admission. It is not a means of evidence, but a waiver of all controversy, so far as the adverse party desires to take advantage of it, and is therefore a limitation of the issues." See, also, Wright v. Lincoln City Lines, Inc., 160 Neb. 714, 71 N. W. 2d 182; Schaub v. City of Scottsbluff, 164 Neb. 805, 83 N. W. 2d 775.

The record evidences that during the trial the parties to this litigation stipulated in open court that "M to L represents a man-made ditch connecting the east end of Lateral 23 with Scout Creek, a ditch constructed by the defendant." The designation therein, "M to L," referred to and identified a line on an exhibit in the case. "M" on the exhibit represents the east end of the lateral and "L" designates where the ditch constructed by defendant (appellant in this court) connected with and emptied into the south branch of Scout Creek. The

line on the exhibit from M to L represents the ditch constructed for the purpose of connecting and which does connect the lateral and Scout Creek. The stipulation in this instance has not been modified and remains in force and effect as made. There has been no effort by appellant to dissipate the effect of the stipulation as to it. Appellant cannot be heard in this litigation to contend anything contrary to the stipulation. It is conclusively bound by the agreement made at the trial.

LeBarron v. City of Harvard, 129 Neb. 460, 262 N. W. 26, 100 A. L. R. 767, states: "A formal, judicial stipulation by the parties as to facts, so long as it stands, is conclusive between them, and cannot be contradicted by evidence tending to show the facts otherwise."

Kipf v. Bitner, 150 Neb. 155, 33 N. W. 2d 518, states: "A judicial admission is a formal act done in the course of judicial proceedings which is a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true. * * * A judicial admission is ordinarily final and conclusive upon the party by whom it was made, unless the trial court, in the exercise of a judicial discretion, timely relieves him from that consequence."

It must therefore be accepted as a fact incapable of dispute in this litigation that appellant constructed the ditch connecting its lateral No. 23 and the south branch of Scout Creek. It follows in the circumstances of the record that appellant is responsible for the consequences of the construction and use of that ditch which caused the injuries and damage to appellees complained of by them in this litigation. It may with propriety be said that appellant does not seriously maintain that appellees are not entitled to the injunctive relief granted them by the judgment of the district court, unless appellant has a prescriptive easement to spill its unused irrigation water into and carry it through Scout Creek, because in the first announcement of the brief of appellant it is

said that the question involved is: "Does the defendant (appellant) have an easement in Scout Creek, which crosses the lands of the plaintiffs (appellees), to carry its waste water from the end of Lateral No. 23, to the North Platte River?" Appellant poses no other question under the title "QUESTION INVOLVED" as being presented by this litigation in this court.

This is an equity case. The trial court made an inspection of the premises and the physical matters involved. It is said in Keim v. Downing, 157 Neb. 481, 59 N. W. 2d 602: "This court may in an equity case give proper consideration to the fact that the trial court inspected the premises and the physical matters involved and that its examination thereof constituted evidence because the relevant facts observed necessarily affected the mind of the court and tended to influence belief or unbelief on the matters at issue in the case." See, also, Shepardson v. Chicago, B. & Q. R. R. Co., 160 Neb. 127, 69 N. W. 2d 376; Bahm v. Raikes, 160 Neb. 503, 70 N. W. 2d 507.

It is concluded that appellees are entitled to the injunctive protection awarded them by the judgment of the district court unless appellant has established the prescriptive easement it claims in Scout Creek.

Appellant asserts that it has acquired and has a prescriptive easement in Scout Creek, to the extent of its capacity, to discharge unused irrigation water from the lateral into Scout Creek and to transport such water through the creek across the lands of appellees to the North Platte River, the source from which the water is derived. Appellant relies upon the testimony of its witnesses to establish the easement it claims.

Wallace I. Quinn testified that he was 77 years of age and was first employed by appellant as a ditch rider on the lateral in 1938. He did not know how long he was employed but he estimated that he worked off and on, but not steadily, for 7 or 8 years. The lateral in 1938 went east to and upon a part of the Rowley land. There

was water discharged from the east end of the lateral on the Rowley land. The witness did not say how much. He said it went into Scout Creek. There was a ditch that ran a little south and east until it got to the east end of the grove that was the east line of that west eighty and there was a pasture there. He then said: "It flowed south when I was there. If I told you any more, I would have to say that I was gone." Whether or not any water was discharged from the lateral at that time depended upon the occurrence or absence of precipitation. When the witness was asked the direction the ditch extended which he claimed was there in 1938 he said: "Well, it would naturally go south if you let it go just a natural course." Later he said any water from the lateral came along through the slough and road and wherever it happened to flow. The slough he referred to was north of the terminus of the lateral. It was much lower than the ground where the lateral was located. The slough is designated on a map in evidence as "marshy land" and is spoken of in the record as Halligan's slough. During the time the witness was employed by appellant it had difficulty in getting water for its purposes and it frequently resorted to the construction of hay dams in the river in an attempt to get water to flow into its works.

William Calhoun testified he was a member of the board of directors of appellant in 1935, 1936, and 1937. He was at the east end of the lateral at times during that period. The water went southeast from the end of the lateral. There was a ditch there. Appellant was short of water when he was on the board. In later years there was plenty of water because appellant had secured storage water. Before it had storage water appellant was short of water for its needs.

Everett E. Wilson testified he was a director of appellant for 8 years commencing in 1944 and continuing into 1952. He knew the lateral as long as he could remember. He said water discharged from the lateral on

the Rowley place went in an easterly direction but it did not go to Scout Creek. He thought it went within about 200 feet of it. There was a low spot there and water from it went into Scout Creek.

C. H. Bostwick testified he was a director of appellant 3 years, 1932-1935. He used water from the lateral and was familiar with it when he was on the board and at various other times. Any water discharged from the lateral on the Rowley land when he was on the board went southeasterly and dropped over in Rowley's pasture. At that time that was the end of it.

Clarence W. Wilson testified he was an assistant ditch rider during 1948 and 1949. He had knowledge of the lateral. Any water from it while he was employed by appellant went towards the southeast but he did not know its destination. There was very little if any water discharged from the lateral the years he worked as ditch rider.

Appellees offered proof that the ditch constructed by appellant connecting the lateral and Scout Creek did not exist in the fall of 1946. The ditch from the east end of the lateral to Scout Creek was constructed by appellant in May 1947. There was no indication of any previous ditch that conducted water from the lateral to Scout Creek. There was a slough at that location. Appellees also produced evidence that before the ditch was made by appellant in 1947 any water discharged from the lateral ran down off of the table and went north to Halligan's slough, sometimes referred to in the record as the north branch of Scout Creek. The lateral was on ground higher than the surrounding area. There was a distinct drop from the lateral to Halligan's slough. The drop box which conducted water from the lateral into the ditch constructed by appellant was installed in 1949.

The character of the litigation requires this court to try the issues de novo and to reach a conclusion independent of and not influenced by the findings of the

trial court except to the extent the evidence is irreconcilably conflicting and as to that this court may consider the fact that the trial court saw the witnesses, observed their manner while testifying, and accepted one version of the facts. This court is also privileged to give proper consideration to the fact that the trial court inspected the premises and the physical matters involved and was thereby influenced in his consideration and decision of the matters at issue. Keim v. Downing, *supra.*

The proof concerning the issues involving the claim of appellant of a prescriptive easement in Scout Creek is equivocal and in some respects inconsistent and unsatisfactory. It is not of the quality that is required to establish such a right. A prescriptive right is not looked on with favor by the law and it is essential that all the elements of use and enjoyment necessary to give title to real estate concur in order to create an easement by prescription. The elements are adverse user under claim of right; continuous, open, exclusive, and notorious enjoyment and knowledge of the servient owner for the full prescriptive period; and identity of the thing enjoyed. The proof must be clear, convincing, and satisfactory.

In Jurgensen v. Ainscow, 155 Neb. 701, 53 N. W. 2d 196, it is said: "The use and enjoyment which will give title by prescription to an easement is substantially the same in quality and characteristics as the adverse possession which will give title to real estate. * * * The use must be adverse, under a claim of right, continuous and uninterrupted, open and notorious, exclusive, with the knowledge and acquiescence of the owner of the servient tenement, and must continue for the full prescriptive period. * * * To prove a prescriptive right to an easement all of the elements to a prescriptive use must be generally established by clear, convincing, and satisfactory evidence." See, also, Stubblefield v. Osborn, 149 Neb. 566, 31 N. W. 2d 547; Onstott v. Airdale Ranch

& Cattle Co., 129 Neb. 54, 260 N. W. 556; Dunn v. Thomas, 69 Neb. 683, 96 N. W. 142; Beckley Nat. Exchange Bank v. Lilly, 116 W. Va. 608, 182 S. E. 767, 102 A. L. R. 462.

A sufficient obstacle to finding that appellant has the right in Scout Creek it claims is the absence of clear, convincing, and satisfactory evidence of when the claimed period of adverse user began; of when appellant commenced to discharge from its lateral a "bankfull" volume of water in Scout Creek which is the extent of the easement now claimed by appellant; of how a bank full easement would or could be estimated, measured, or ascertained; of what amount of water was actually discharged in Scout Creek at different times during any period; or of what amount of discharged water was intended to be adverse in nature and under claim of right. The law treats with disfavor a claim of prescriptive right based on adverse user and requires the elements to be clearly, convincingly, and satisfactorily established. A claimed easement must be viewed from both ends of the prescriptive period. The nature and extent or scope of the user must from the beginning be clearly established. At the end of the period it must appear in retrospect that there has been no material change or variance from the limits or course adopted or established at the beginning. A lesser user prevents a right to an easement and a greater user is of no importance until the full prescriptive period has elapsed from the initiation of the greater use. The law requires that the easement must be clearly definable and precisely measured.

Dunn v. Thomas, *supra,* before considering the user had during the claimed prescriptive period, closely examined and defined the nature and extent of the user in the beginning. It also declared that a prerequisite to acquiring an easement by adverse user was that it must be continuous and substantially identical during the entire statutory period as to manner and extent. In that

case the moving of the location of a ditch a short distance was considered sufficient to defeat the claim of an easement. The language of the case is: "In order to acquire an easement by prescription, the adverse user must not only be continuous in point of time, but also substantially identical, during the whole of the statutory period, with respect to manner and extent. * * * One who seeks to acquire an easement of maintaining a ditch over another's land by adverse user must maintain it without material change of location for the full statutory period."

Hagadone v. Dawson County Irr. Co., *supra,* states: "An easement for the drainage of waste waters from an irrigation ditch, into a creek flowing through the land of another, which greatly raises the natural level of said creek, cannot be acquired until it has been freely exercised without material change under a claim of right for the full period of ten years."

Onstott v. Airdale Ranch & Cattle Co., *supra,* decided: "An easement by prescription can be acquired only by an adverse user for ten years. Such use must be open, notorious, exclusive and adverse. * * * To establish an easement by prescription, the evidence must establish the extent of the adverse use for a period of ten years. * * * An easement acquired by prescription is limited in extent to adverse use during the ten-year period."

The language of Drieth v. Dormer, 148 Neb. 422, 27 N. W. 2d 843, includes the following: "The rule as to the right of the dominant tenant with regard to an easement obtained by prescription is well stated in 28 C. J. S., Easements, § 74, p. 751, as follows: 'Where an easement is acquired by prescription, the extent of the right is fixed and determined by the user in which it originated, or, as it is sometimes expressed, by the claim of the party using the easement and the acquiescence of the owner of the servient tenement.' In 17 Am. Jur., Easements, § 100, p. 997, the rule is stated as follows:

'If an easement is acquired by prescription, the purpose for which the easement may be used is limited by the user under which the easement was acquired. The presumption of a grant is afforded only because possession amounting to a continuous claim of title has been acquiesced in for a period necessary to give a prescriptive right. Therefore, the presumed grant can never extend further than the user in which the other property has acquiesced.' "

The court in Fox v. Pierce, 50 Mich. 500, 15 N. W. 880, said: "A right of way that is too indefinite for a determinate description cannot be established and protected by a court of chancery. * * * A bill to establish a right of way and to enjoin encroachments upon it cannot be sustained where it does not furnish the means for declaring exactly what the right is and the precise locality which it occupies with the shape and dimensions thereof, and where the proofs show nothing but an oral agreement for its establishment, and such occasional variations in the bounds of the locality as to make it impossible to determine where it originally existed."

The majority rule applicable to the somewhat analogous situation of the right of the owner of a dam who has obtained a prescriptive easement to overflow land of the servient owner lends support to the position of appellees in this case. The measure of the prescriptive right which one may acquire to flow the lands of another by the maintenance of a dam is not generally determined by the height of the structure of the dam but is commensurate with the actual enjoyment of the easement as evidenced by the extent to which the land of the owner of the servient tenement was habitually or usually flowed during the period of prescription. In Johnson v. Twin Falls Canal Co., 66 Idaho 660, 167 P. 2d 834, the court said: "The right to flood another's land acquired by prescription is coextensive with the extent to which right has been enjoyed during period of prescription, so that manner and extent of use during

prescriptive period, with reference to head of water maintained and other circumstances, limit extent to which privileges available after right has fully vested." See, also, Donnelly Brick Co. v. City of New Britain, 106 Conn. 167, 137 A. 745; Whitehair v. Brown, 80 Kan. 297, 102 P. 783; Shelton v. Mosier, 19 Ohio App. 89; Smith v. Russ, 17 Wis. 227, 84 Am. Dec. 739; Annotation, 18 Ann. Cas. 218.

Appellant says that the easement established by user in this case is the right of appellant to discharge water into and transport it through Scout Creek, that the extent of the easement is the width and depth of Scout Creek, and that the amount of water put in the creek at any time by appellant is unimportant. Appellant claims an easement to flow its surplus water into and through Scout Creek to the full capacity of the creek. The only authority for this position referred to by appellant is Hagadone v. Dawson County Irr. Co., *supra*. In that case this court specifically found the evidence was not sufficient to establish any easement for a right to continue the overflow of the land of plaintiffs which caused the damage attempted to be recovered in that case. That case does not support the contention of appellant.

The record in this case is barren of anything indicating the ability of appellant to comply with an easement of the character now claimed by it and this is indicative of the indefinability and extent of the alleged easement. The evidence is convincing that any use by appellant of Scout Creek has been variable and not substantially identical. Appellant was unable to trace the location or course of its spillway before the year 1947. The burden of the claimed easement was influenced by the location of the spillway and it was required to be substantially in the same place during the prescriptive period in order for it to support the creation of an easement in favor of appellant. Appellant in 1947 excavated a ditch from the eastern terminus

of its lateral to Scout Creek. There was then a change in the operations of appellant and in its water delivery methods resulting in a greatly increased amount of unused irrigation water that was discharged into Scout Creek. This was less than 10 years before this litigation was commenced. The record fails to show that appellant has acquired an easement to discharge water into Scout Creek and to transport it therein through the lands of appellees to the North Platte River. The findings and adjudication of the district court in this respect are correct.

The parties, on the date designated by the court for the trial of the two cases concerned in this litigation, stipulated that the issues between the parties relating to the liability of appellant for the acts complained of by appellees and the right of appellees to an injunction against appellant should be heard simultaneously; that the evidence offered and received and the proceedings had at the trial should be a part of the record of each of the causes; and that the issues relating to the nature, extent, and value of damages suffered by appellees by reason of the acts of appellant should be continued until a later date set by the court when the cases should be tried separately as to those issues. The stipulation was in writing thereon attested by signature of the judge of the district court, and was approved and made an order of the court. The stipulation was filed on the date made in the office of the clerk of the district court and it is exhibited by the transcript. The trial then proceeded on the issues presented, not, however, including the issues as to the extent and amount of damages claimed by appellees. The cause of action for damages in each of the cases was excluded from the trial.

The stipulation was respected throughout the trial. There was no desire evinced or effort made by anyone to modify or nullify it. After the trial was completed the case was taken under advisement by the

court. When it was later decided the court found that the meager evidence adduced at the trial as to damages claimed by appellees and the causation thereof was so uncertain and speculative that no damages could be assessed or allowed and that appellees should not be allowed to proceed further to try the issue of damages claimed by them due from appellant. The court then rendered a judgment of dismissal of the cause of action pleaded in each of the cases for damages. A motion for a new trial was filed in each case by the respective appellees. The motions were each denied and appellees have cross-appealed because of the judgment of dismissal.

It is not claimed that the stipulation was not binding on the parties and the court or that a cause of action for damages against appellant was not sufficiently pleaded in each of the cases. The trial court only found, before there was or could have been, because of the stipulation, a trial of the causes of action for damages, that the damages claimed by appellees were so uncertain and speculative that none could be assessed or allowed.

The very early case of Rich v. State Nat. Bank, 7 Neb. 201, 29 Am. R. 382, declares: "Written agreements of attorneys, or those entered into by them in open court, in regard to the disposition of cases, will be enforced * * *." See, also, Drake v. Ralston, 137 Neb. 72, 288 N. W. 377; Schmehl v. Buffalo County, 149 Neb. 277, 30 N. W. 2d 882; § 7-107, R. R. S. 1943.

In Smith v. Smith, 90 Fla. 824, 107 So. 257, the court said: "The general rule is that stipulations voluntarily entered into between the parties to a cause or their attorneys, for the government of their conduct and the control of their rights during the trial or progress of the cause, will be respected and enforced by the courts, where such stipulations are not contrary to good morals or sound public policy."

In Penney v. First Trust & Savings Bank, 102 Fla.

185, 135 So. 805, it was said: "Courts will enforce valid stipulations unless some good cause is shown for declining to do so, especially where the stipulation has been acted upon so that the parties could not be placed in status quo." See, also, Pasco Holding Co. v. Wells, 126 Fla. 636, 171 So. 674; 50 Am. Jur., Stipulations, § 12, p. 612.

The stipulation made by the parties and approved and adopted by the court was binding upon the parties and the court. The action of the trial court dismissing the cause of action for damages alleged in each of the cases was prejudicial error. The cross-appeal of appellees should be and is sustained.

The judgment of the district court granting appellees a permanent injunction prohibiting appellant from spilling water from its irrigation system into Scout Creek and adjudicating that appellant does not have a prescriptive easement to discharge unused irrigation water from its works into Scout Creek should be and it is affirmed. The judgment of the district court dismissing the cause of action against the appellant for damages pleaded in the petition in each of the cases involved in this litigation should be and is reversed and the cause is remanded for further proceedings in each of said cases in accordance with this opinion and the stipulation entered into on the 19th of June 1956, by the parties to this litigation which was approved and adopted by the trial court.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED.

YEAGER and WENKE, JJ., participating on briefs.